Julie **COTTON**, Plaintiff–Appellee–Cross–Appellant,

**v.**

William **SLONE**, Defendant–Appellant–Cross–Appellee.

**Nos. 1599, 1769, Dockets 93–7112, 93–7114.**

United States Court of Appeals, Second Circuit.

Argued June 4, 1993.

Decided Sept. 10, 1993.

Anthony A. Ball, Hartford, CT (Leslee B. Ives, Gillen & Ball, P.C., Hartford, CT, of counsel), for defendant-appellant-cross-appellee.

Eliot B. Gersten, Hartford, CT (Gersten & Clifford, Hartford, CT, of counsel) for plaintiff-appellee-cross-appellant.

Before: PIERCE, WALKER and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

In October 1989, Julie Cotton, a small-scale investor, sued William Slone, a licensed stockbroker, claiming he mishandled her investment account. Cotton's complaint, brought in the United States District Court for the District of Connecticut (Cabranes, J.), alleges violations of federal and state securities laws, and breach of contract. On January 19, 1993, after more than three years of litigation, the district court granted a default judgment to Cotton in the amount of $40,000 plus post-judgment interest. Slone appeals from the judgment, raising only the issue of whether the district court, at the outset of the lawsuit, properly denied his motion to compel arbitration and stay proceedings pending arbitration. Cotton cross-appeals the district court's denial of an award of attorney's fees.

In the district court, Slone's motion to compel arbitration raised the issue of whether an arbitration agreement between a brokerage firm and a customer confers upon the firm's employees the right to compel arbitration of a dispute with the customer arising out of acts performed in the course of employment. This Court has not decided that question, although we recently noted that "[c]ourts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." *Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1360 (2d Cir.1993). While the district court rejected Slone's asserted right to arbitration, we do not reach that issue because we find that Slone waived whatever right he had to arbitrate this dispute. On that ground of waiver, we affirm the decision of the district court with respect to arbitrability.

Cotton argues on her cross-appeal that the district court erred in denying her application for an award of attorney's fees under Connecticut securities laws. We vacate the district court's denial of attorney's fees and remand for further proceedings consistent with this opinion.

## BACKGROUND

Slone is a stockbroker licensed by the National Association of Securities Dealers and the State of Connecticut. At the time of the 1987 stock market crash—which indirectly precipitated this dispute—Slone was employed as a registered representative by the brokerage firm of Advest, Inc. ("Advest"). Cotton had been Slone's customer since approximately 1984 when he was employed by another brokerage firm, and she continued to invest through Slone when he moved to Advest. Cotton signed a customer agreement with Advest in March 1987 containing an

arbitration clause which provides in relevant part:

> The undersigned [Cotton] agrees, and by carrying an account for the undersigned you [Advest] agree, that ... all controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration in accordance with the rules then prevailing of the Arbitration Committee of the National Association of Securities Dealers, Inc., the American Arbitration Association, the Board of Arbitration of the New York Stock Exchange or the Board of Arbitration of the American Stock Exchange as I may elect.

Cotton claims that, throughout her relationship with Slone, she emphasized that her investment goals were conservative: maintenance and moderate growth of her savings at fairly low risk. She contends that her account sustained approximately $75,000 in losses because Slone, while employed by Advest, made unauthorized and unsuitable purchases, churned the account to generate commissions, and lied to Cotton whenever she questioned Slone about her account statements.

Cotton came to learn of Slone's malfeasance when, in the aftermath of the October 1987 stock market crash, she received a margin call on her account even though she had never authorized trades on margin. Advest conducted an investigation and at first denied wrongdoing. Cotton then retained counsel and, in January 1989, Advest paid Cotton $30,000 as settlement for any securities fraud claims Cotton had against Advest. The record on appeal does not disclose whether Advest secured a release for its employees as well as itself at the time of the settlement. Nor does the record on appeal, which omits Slone's answer, indicate whether he pleaded release as a defense.

On October 6, 1989, Cotton filed suit against Slone, alleging breach of contract and securities fraud in violation of section 10(b) of the Securities and Exchange Act of 1934 and Rules 10b–5 and 10b–16 promulgated thereunder (15 U.S.C. § 78j(b) and 17 C.F.R. §§ 240.10b–5 and 240.10b–16), and in violation of the Connecticut Uniform Securities Act (C.G.S. §§ 36–472, 36–498).

On December 28, 1989, Slone invoked the arbitration provision in the Advest customer agreement, and filed a motion to compel arbitration and to stay proceedings pending arbitration, pursuant to section 3 of the Federal Arbitration Act. 9 U.S.C. § 3 (1988). The district court denied Slone's motion. Slone then moved for certification of an interlocutory appeal under 28 U.S.C. § 1292(b). The district court denied this motion, properly so because certification under section 1292(b) was unnecessary; Slone could have taken an appeal as of right under section 16(a) of the Federal Arbitration Act, added by the 1988 Judicial Improvements and Access to Justice Act. Section 16(a) of the Act provides:

> An appeal may be taken from—
>
> (1) an order—
>
> (A) refusing a stay of any action under section 3 of this title, [or]
>
> (B) denying a petition under section 4 of this title to order arbitration to proceed....

9 U.S.C. § 16(a) (1990 Supp. II). The record does not explain why Slone did not take an immediate interlocutory appeal available under section 16(a).

Slone thereafter answered the complaint and (according to the appellate briefs) pleaded arbitrability as a defense. Although he ultimately defaulted, Slone proceeded to participate actively in discovery and motion practice concerning Cotton's claims over the next three years.

In November 1990, discovery apparently completed, Cotton filed her portion of the joint pretrial submission required by the district court. She subsequently moved for default based on Slone's failure to help prepare or respond to the pretrial submission. Slone's counsel then moved to withdraw from his engagement. The district court denied both motions without prejudice to permit the parties to explore compromise. Settlement discussions failed, and in October 1991 Slone's counsel moved for summary judgment on Slone's statute of limitations de-

fense. Cotton submitted opposition papers, but Slone's counsel withdrew the motion shortly before its hearing date.

In June 1992, the district court ordered the submission of a jointly prepared pretrial memorandum, cautioning Slone that failure to comply would result in default. Before the required date of that submission, however, the court granted the renewed motion by Slone's counsel to withdraw from the engagement based in part on Slone's failure "to meet certain obligations." Slone, acting *pro se*, failed to comply with the court's order regarding preparation of a pretrial memorandum and Cotton moved for entry of default. Slone then moved for court-appointed counsel, which motion was denied "in view of [Slone's] substantial annual income" of $120,-000. Slone was ordered to respond to the motion for default by October 5, 1992, either through counsel or *pro se*. He did so by a letter asking the court to reconsider (1) its denial of his motion to appoint counsel, and (2) its denial of his motion to compel arbitration. The district court granted reconsideration and adhered to its previous rulings. On October 20, 1992, the district court granted Cotton's motion for default.

In her application for judgment upon default, Cotton sought damages of $45,000 and attorney's fees of $47,583. Slone filed no objection. The district court awarded Cotton damages of $40,000 plus post-judgment interest, but denied an award of attorney's fees, stating only that "[t]he court has determined, in the exercise of its discretion, that an award of attorney's fees is not appropriate in this case."

After entry of the default judgment, Slone filed a notice of appeal, retained counsel, and now seeks review of the district court's denial of Slone's motion to compel arbitration and stay proceedings pending arbitration. Cotton responds by arguing, among other things, that, even if Slone once had a right to compel arbitration, he waived that right by failing to take a timely appeal and by causing substantial prejudice to Cotton by his active participation in the lawsuit. Cotton also cross-appeals the district court's denial of attorney's fees.

## DISCUSSION

### I. Waiver

We have emphasized that there is a strong presumption in favor of arbitration, *see Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985), and that waiver of the right to arbitration "is not to be lightly inferred." *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968). To avoid waiver, however, it is not enough merely to assert a right without taking appropriate steps to secure it. Waiver will be inferred when a party engages in protracted litigation that results in prejudice to the opposing party. *Kramer v. Hammond,* 943 F.2d 176, 179 (2d Cir.1991) (citing *Com–Tech Assocs. v. Computer Assocs. Int'l, Inc.,* 938 F.2d 1574, 1576 (2d Cir.1991)); *see Bowers v. Transportacion Maritima Mexicana, S.A.,* 901 F.2d 258, 263 (2d Cir.1990). Sufficient prejudice to infer waiver has been found when a party seeking to compel arbitration engages in discovery procedures not available in arbitration, *Liggett & Myers Inc. v. Bloomfield,* 380 F.Supp. 1044, 1047–48 (S.D.N.Y.1974), makes motions going to the merits of an adversary's claims, *Com–Tech,* 938 F.2d at 1576, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense, *Kramer,* 943 F.2d at 179. The waiver determination necessarily depends upon the facts of the particular case and is not susceptible to bright line rules. *Id.*

In the present case, Slone was fully aware of his alleged right to compel arbitration, having raised it three times: in his motion to compel arbitration made at the outset of the litigation, in his answer (according to the appellate briefs), and in his motion for reconsideration of the denial of his motion to compel arbitration. Slone was also demonstrably familiar with the Federal Arbitration Act, which he cited numerous times in his submissions to the district court. Yet he failed to use section 16(a) of the Act to obtain immediate interlocutory appellate review of the denial of his motion to compel arbitration. *See* 9 U.S.C. § 16(a)(1).

Instead, Slone actively litigated this dispute in federal court. Discovery was conducted by both parties, with Slone initiating

at least two depositions, including those of Cotton and her expert witness. Slone made several substantive motions, including one for summary judgment. In resisting discovery, Slone repeatedly invoked and submitted himself to the powers and procedures of the district court: he sought extensions of time and revisions of the discovery schedule, and at least twice sought protective orders which were denied. Slone's conduct has imposed unnecessary expense and delay on Cotton, which would be compounded if she were now required to arbitrate her claim. Meanwhile, Slone has secured for himself the benefits of pretrial discovery that is often unavailable in an arbitral forum. *See Zwitserse Maatschappij van Levensverszekering en Lijfrente v. ABN Int'l Capital Markets Corp.*, 996 F.2d 1478, 1480 (2d Cir.1993) (per curiam) (waiver found where party litigated for over a year in non-U.S. judicial forum and engaged in discovery not available in arbitration). The resulting prejudice to Cotton compels a finding of waiver.

Section 16(a), which provides that an interlocutory appeal "may be taken" from an order that denies a motion to compel arbitration (or for a stay pending arbitration), is by its phrasing permissive. Our ruling in this case is not intended to put the proponent of arbitration at risk of waiving appellate rights whenever it fails to take a section 16(a) interlocutory appeal available to it. For example, if Slone had failed to take a section 16(a) interlocutory appeal, and passively absorbed a default without actively participating in the litigation, there may well have been no prejudice to Cotton, or none that would support waiver. Similarly, no prejudice may result from a failure to take a section 16(a) interlocutory appeal available as of right where a lawsuit pits one signatory to an arbitration agreement against multiple adversaries, some of whom are signatories, some not; or where a lawsuit involves some claims that are arbitrable and some that are not, or a non-arbitrable counterclaim. The waiver determination is fact-specific and these illustrations are not intended to be predictive or exhaustive. Slone's waiver arises not from his bare failure to take an appeal that was available at the outset, but by his conduct after that opportunity passed. A finding of prejudice continues to be a prerequisite to waiver of the arbitration right.

This result is consistent with the legislative goals of the Federal Arbitration Act and with section 16(a) in particular. Section 16(a) is designed to streamline the appellate aspect of the litigation process so that parties may realize their arbitration rights at the earliest possible moment. We have previously observed (when section 16 was still part of section 15):

> The House Report concerning § 15 states that the section provides for interlocutory appeals "when a trial court rejects a contention that a dispute is arbitrable," but "specifically prohibit[s]" interlocutory appeals "when the trial court finds that the parties have agreed to arbitrate." H.R.Rep. No. 100–889, 100th Cong., 2d Sess. 36–37, reprinted in 1988 U.S.Code Cong. & Admin.News 5982, 5997. Section 15 thus furthers the "liberal federal policy favoring arbitration," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), because it "explicitly permits immediate appeals from orders giving litigation precedence over arbitration," but forbids immediate appeals from "[o]rders favoring arbitration." *Janneh v. GAF Corp.*, 887 F.2d 432, 436 n. 5 (2d Cir.1989).

*McCowan v. Dean Witter Reynolds, Inc.*, 889 F.2d 451, 453 (2d Cir.1989). The aims of section 16(a) would be defeated if a party could reserve its right to appeal an interlocutory order denying arbitration, allow the substantive lawsuit to run its course (which could take years), and then, if dissatisfied with the result, seek to enforce the right to arbitration on appeal from the final judgment.

## II. Attorney's Fees

Attorney's fees mandated by state statute are available when a federal court sits in diversity. *See Alyeska Pipeline Service Co. v. Wilderness Soc.*, 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622–23 n. 31, 44 L.Ed.2d 141 (1975). The same principle applies in the context of pendent jurisdiction: "it is the *source* of the right sued upon, and not the ground on which federal jurisdiction over the

case is founded, which determines the governing law." *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 540 n. 1 (2d Cir.1956). Accordingly, although attorney's fees are not permitted in actions brought solely under section 10(b) of the Securities and Exchange Act, attorney's fees may be awarded on a pendent state law claim if the claim permits such an award and if the claimant has established the elements necessary for recovery on the pendent state law claim.

■ In addition to a section 10(b) claim, Cotton's complaint alleged state law securities fraud under C.G.S. § 36–498(a)(2), which proscribes substantially the same conduct as federal law:

> [A]ny person who ... offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him ... for ... reasonable attorneys' fees....

The complaint's factual allegations are taken as true in light of the general default judgment and in the absence of any findings by the district court concerning liability. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981); 10 Wright, Miller & Kane, *Federal Practice & Procedure: Civil 2d* § 2688, at 444 (1983). We must presume therefore that Cotton has established all theories of recovery alleged in her complaint, including state law securities fraud, and that her entitlement to attorney's fees on her state law claim is governed by state law.

■ Section 36–498 of the Connecticut General Statutes mandates the award of attorney's fees to a prevailing plaintiff "in order to encourage the enforcement of [the Connecticut Uniform Securities Act] by victims of improper securities transactions who might not otherwise be able to afford to do so." *Russell v. Dean Witter Reynolds, Inc.*, 200 Conn. 172, 196, 510 A.2d 972, 985 (1986). The only issue within the court's discretion

on a request for attorney's fees under C.G.S. § 36–498 is the reasonableness of the amount requested. *Id.* The district court here denied the request for attorney's fees, stating only that "in the exercise of its discretion, ... an award of attorney's fees is not appropriate in this case." The district court did not specifically address the availability of attorney's fees under the Connecticut statute. Therefore, it is unclear whether the district court misunderstood the governing law or affirmatively awarded zero as the appropriate amount. Accordingly, we remand the issue of attorney's fees to the district court with instructions to reconsider Cotton's request in light of her entitlement to such fees under C.G.S. § 36–498, and to place on the record the district court's reasoning for whatever amount is awarded.

## CONCLUSION

Since Cotton has been prejudiced by Slone's failure to take a timely appeal of the district court's denial of his motion to compel arbitration and stay proceedings pending arbitration, Slone has waived his right, if any, to arbitrate Cotton's claims. Therefore, the judgment of the district court is affirmed insofar as it denies arbitration and awards damages on default. On the cross-appeal, the judgment with respect to attorney's fees is vacated and remanded for further proceedings consistent with this opinion.