101 F.3d 813
 65 USLW 2337
 UNITED STATES FIRE INSURANCE CO.; International Insurance
Company, Plaintiffs-Appellees,
v.
NATIONAL GYPSUM CO., n/k/a Asbestos Claims Management
Corporation; NGC Settlement Trust, Defendants-Appellants,
Center For Claims Resolution, Defendant.
 No. 1761, Docket 95-7806.
 United States Court of Appeals,
Second Circuit.
 Argued July 18, 1996.
Decided Nov. 4, 1996.
 
 Matthew L. Jacobs, Kirkpatrick & Lockhart LLP, Washington, DC (Julia Reynolds Johnson, Donald E. Seymour, and David M. Smith, of counsel), for Defendants-Appellants.
 George R. Hardin, Bumgardner, Hardin & Ellis, P.A., Springfield, NJ (Judson L. Hand, of counsel), for Plaintiffs-Appellees.
 Before: WINTER and LEVAL, Circuit Judges, and THOMPSON, District Judge.*
 WINTER, Circuit Judge:
 
 
 1
 This appeal arises from Judge Martin's issuance of an injunction against arbitration of a dispute between National Gypsum Company and NGC Settlement Trust (collectively "NGC") on the one hand, and U.S. Fire Insurance Company ("U.S. Fire") and International Insurance Company ("International") on the other. NGC appeals from that injunction and the denial of a cross-motion for an order pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, compelling arbitration. The underlying dispute is over the allocation of costs of defense against asbestos-related bodily-injury claims. Judge Martin held that the doctrine of collateral estoppel barred arbitration because of an earlier judicial decision. For the reasons set forth below, we believe that on the facts presented the issue of collateral estoppel is itself arbitrable and reverse.
 
 BACKGROUND
 
 2
 The history of the litigation between these parties is set forth in detail in our earlier decision in Stonewall Ins. Co. v. Asbestos Claims Mgt. Corp., 73 F.3d 1178, 1187-91 (2d Cir.1995), and we therefore recount only briefly the factual background pertinent to this appeal.
 
 
 3
 The parties are among the signatories of an Agreement Concerning Asbestos-Related Claims dated June 19, 1985, known as the "Wellington Agreement" or "Wellington." This agreement was entered into between a number of producers of products containing asbestos on the one hand, including National Gypsum Company, now Asbestos Claims Management Corporation, and a number of their insurers on the other. Wellington resolved disputes regarding insurance coverage with respect to bodily-injury claims; it did not address insurance coverage disputes over asbestos-related claims involving property damage. Wellington established a procedure by which subscribing producers would submit bodily-injury claims to an Asbestos Claims Facility ("ACF") that would evaluate, defend, and settle the claims and pay settlements, judgments, and legal expenses incurred in the handling of claims against subscribing producers. On October 3, 1988 the ACF was dissolved, and NGC and 21 of its insurers formed the Center for Claims Resolution to carry on the same functions as had the ACF.
 
 
 4
 Important to the present case is Wellington's broad arbitration clause, which prescribes that "Subscribing Producers and Subscribing Insurers shall resolve through alternative dispute resolution, in the manner set forth in Appendix C hereto, any disputed issues within the scope of the Agreement and the Appendices hereto." Wellington Agreement § VIII p 5. Appendix C of the Wellington Agreement provides for an alternative dispute resolution process ("ADR") of three basic and progressive stages: negotiation, an arbitration proceeding, and an appellate process. Because Wellington applies only to bodily-injury claims, property-damage claims under the same policies are not covered by the arbitration clause.
 
 
 5
 In December 1986, Stonewall Insurance Company filed an action for declaratory relief against NGC and 37 of its other primary and excess insurers, including U.S. Fire. Stonewall sought a determination of its rights and obligations under policies issued to NGC with respect to asbestos-related property-damage claims against NGC. NGC counterclaimed against Stonewall and cross-claimed against the defendant insurers for a declaration of each non-Wellington insurer's indemnity and defense obligations for all asbestos-related claims and for a declaration of each Wellington insurer's obligations with respect to property-damage claims. NGC also filed a third-party complaint against International and another insurer, seeking a declaration with respect to property-damage claims.
 
 
 6
 In the course of that litigation, Judge Martin entered a partial declaratory judgment for the insurance companies, including U.S. Fire and International, holding them not liable for defense costs in connection with asbestos-related property-damage claims. Stonewall Ins. Co. v. National Gypsum Co., No. 86 Civ. 9671 (S.D.N.Y. Mar. 22, 1993) ("Gypsum I "). Judge Martin also held that the non-Wellington insurers bore no liability for defense costs on bodily-injury claims. On March 30, 1993, partial declaratory judgments were entered that incorporated all prior rulings. NGC appealed on various issues including U.S. Fire's and International's defense obligations for asbestos-related property-damage claims. We affirmed in relevant part in Stonewall Ins. Co. v. Asbestos Claims Mgt. Corp., 73 F.3d 1178 (1995).
 
 
 7
 On November 2, 1993, NGC initiated an ADR pursuant to Appendix C of the Wellington Agreement seeking payment of the cost of defending bodily-injury claims. NGC contends that this was the earliest date on which it could have initiated an ADR because the policies in question were not accessed under the Wellington formula until September 1993. (A dispute may exist over this conclusion, but it does not affect our disposition of this matter.) Negotiations were unsuccessful. In a letter dated December 23, 1994, NGC notified the Center for Public Resources of its desire to initiate the arbitration proceeding phase of the ADR with respect to the three excess insurance policies at issue in this case. U.S. Fire and International responded by filing an action in the federal court for the District of New Jersey seeking an injunction against further arbitration on the ground that Judge Martin's ruling on property-damage defense costs has a preclusive effect on the issue of U.S. Fire's and International's liability for defense costs relating to bodily-injury claims. NGC cross-moved for an order to compel arbitration pursuant to Section 4 of the FAA, 9 U.S.C. § 4. In February 1995, the case was transferred to the Southern District of New York.
 
 
 8
 Judge Martin granted the injunction requested by U.S. Fire and International and denied NGC's cross-motion for an order compelling arbitration. He held that his earlier decision on the question of allocation of defense costs for property-damage claims had issue-preclusive effect on the question of defense obligations for bodily-injury claims. In reaching this decision, he reasoned the issues were identical because the Wellington Agreement--which governs only bodily-injury defense costs--adopted the doctrine of contra proferentem that he had applied in his earlier decision relating to various non-Wellington insurance contracts. This appeal by NGC followed.
 
 DISCUSSION
 
 9
 NGC argues that the issue-preclusive effect of the district court's prior decision must itself be arbitrated. In reviewing determinations of the scope of arbitration agreements and denials of orders compelling arbitration, we apply a de novo standard of review. See Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 121 (2d Cir.1991); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir.1987).
 
 A. Arbitration of Issue Preclusion
 
 10
 NGC argues that issue preclusion, like other defenses to arbitrability, is arbitrable, and, because issue preclusion can be arbitrated, it must be arbitrated. We agree.
 
 
 11
 Our analysis begins with the FAA's strong presumption of arbitrability. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (holding that antitrust trust claims are arbitrable); Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (holding that securities claims are arbitrable and district court therefore must compel arbitration); Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability"). As a result of this presumption, arbitration clauses themselves are to be construed as broadly as possible. Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 19 (2d Cir.1995); David L. Threlkeld & Co. v. Metallgesellschaft, Ltd., 923 F.2d 245, 250 (2d Cir.), cert. dismissed, 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991).
 
 
 12
 If a party refuses to arbitrate, arbitrability of the dispute hinges only on whether there is an agreement to arbitrate and, if so, whether the dispute falls within that agreement. See 9 U.S.C. § 4; see also National Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 135 (2d Cir.1996) ("Belco "); Deloitte Noraudit A/S v. Deloitte Haskins & Sells, 9 F.3d 1060, 1063 (2d Cir.1993); Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 45 (2d Cir.1993); Threlkeld, 923 F.2d at 249; Conticommodity Servs. v. Philipp & Lion, 613 F.2d 1222, 1224-25 (2d Cir.1980).
 
 
 13
 We hold that the dispute in this case is within the agreement to arbitrate, because in order to reach its conclusion that the issues concerning costs of defense were identical, the district court found it necessary to interpret the Wellington Agreement. It found that
 
 
 14
 [t]he arbitrator would interpret the contract language at issue according to the rules of construction set forth in the Wellington Agreement. See Wellington Agr. Appendix B, p 4. Specifically, § XI, p 1 of Wellington provides: "[U]nless it expressly provides otherwise, each excess insurance policy ... shall pay allocated expenses [i.e., defense costs]."
 
 
 15
 In re Arbitration Between National Gypsum Co. and United States Fire Ins. Co., 1995 WL 413278 at * 5 (S.D.N.Y. July 13, 1995). The court then found this language to be essentially a restatement of the common law rule of contra proferentem--"construction of ambiguous language in an insurance policy against the insurer-drafter--which was applied in Gypsum I." Id. However obvious this interpretation might seem and whether or not Wellington restates a well-known standard of construction or provides one of its own, the fact is that the district court had to interpret Wellington in order to rule on the question of issue preclusion. At least one facet of the dispute thus requires interpretation of Wellington, plainly a question for the arbitrator rather than for the district court to decide.
 
 
 16
 Nor is issue preclusion so obscure a question that doubt is cast upon whether the parties intended that it be subject to arbitration. In First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the Supreme Court noted that courts should apply a presumption that parties did not agree to arbitrate arbitrability unless there is clear and unmistakable evidence to the contrary. 514 U.S. at ----, 115 S.Ct. at 1924. But once a court finds that there is an agreement to arbitrate some issues, the presumption switches: ambiguity as to whether an issue is within the scope of an arbitration agreement is resolved in favor of arbitrability. Id. First Options involved the issue of whether a court or the arbitrator should decide arbitrability. The Court found the issue of the arbitrability of arbitrability to be so arcane that it inferred that parties who do not express a preference are unlikely to have considered the issue. Not having considered the issue, the parties would, in the Court's view, likely have assumed that the arbitrator would not resolve that issue because of the principle that parties will be subject to arbitration only on issues they have agreed to arbitrate. Id. at ---- - ----, 115 S.Ct. at 1924-25. In the instant matter, the question of who should decide the issue-preclusive effect of a prior judgment is not so arcane because, unlike the arbitrability of arbitrability, it is not a higher-order question. Further, given a valid arbitration agreement with sweeping language and the courts' well-known tendency to find issues arbitrable, the insurers can hardly claim that their reasonable expectations are defeated.
 
 
 17
 We find additional support for the arbitrability of issue preclusion from the fact that the defense of issue preclusion is waivable in a second proceeding. See Sinicropi v. Milone, 915 F.2d 66 (2d Cir.1990) (holding that district court must enforce stipulation under which defendant agreed to withdraw defense of collateral estoppel and stipulation had been approved by court and was not manifestly unjust); see also 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4405 (1981 & Supp.1996). If one can agree to waive collateral estoppel without consideration, one can agree to arbitrate the issue as part of a contractual scheme.
 
 
 18
 Our decision is consistent with our recent holding that the issue-preclusive effect of a prior arbitration is arbitrable and so must be arbitrated. Belco, 88 F.3d at 135-36. In Belco we rejected the argument that issue preclusion is not related to the merits of an agreement and nonarbitrable, noting that "Belco's claim of preclusion is a legal defense to National Union's claim. As such it is itself a component of the dispute on the merits." Belco, 88 F.3d at 135. Although the present case involves the issue-preclusive effect of a prior judgment, Wellington's arbitration clause covers "any disputed issues within [its] scope." Thus, a defense based on the issue-preclusive effect of the prior judgment is part of the dispute on the merits.
 
 
 19
 Finally, U.S. Fire and International also argue that, by litigating the issue of property-damage defense costs in Gypsum I, NGC has waived its right to arbitrate the allocation of bodily-injury defense costs. As far as the record discloses, the insurers did not make this argument before the district court. Generally, a court of appeals will not consider an issue raised for the first time on appeal. Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); Greene v. United States, 13 F.3d 577, 586 (2d Cir.1994). Nor does this claim present the manifest injustice or the type of purely legal issue that can lead us to disregard the general rule. Greene, 13 F.3d at 586. In particular, we note the presence of a factual dispute over the earliest date on which arbitration could have been started. We therefore do not reach the merits of the insurers' waiver argument.
 
 
 20
 For the foregoing reasons, we reverse the granting of the injunction and order arbitration of the dispute over the allocation of defense costs for bodily-injury claims. The insurers are of course free to raise the defense of issue preclusion before the arbitrator.
 
 
 
 *
 Honorable Alvin W. Thompson, of the United States District Court for the District of Connecticut, sitting by designation