**Robert THOMAS, Plaintiff,**

v.

**A.R. BARON & CO., INC., The Baron Group, Inc., Jeffrey Weissman, Martin Weissman, Seymour Weissman, Andrew Bressman, Mark A. Goldman, D.H. Blair & Co., Inc., and J. Morton Davis, Defendants.**

**No. 95 Civil 1615 (JGK).**

United States District Court,
S.D. New York.

June 3, 1997.

Order Denying Reargument July 14, 1997.

Max Folkenflik, Folkenflik & McGerity, New York City, for Plaintiffs.

Edward T. McDermott, Justin Y.K. Chu, Pollack & Kaminsky, New York City, for Defendants J. Morton Davis, D.H. Blair.

KOELTL, District Judge:

This is a securities fraud case brought by Robert Thomas against various defendants including the brokerage firm D.H. Blair & Co., Inc. ("Blair") and its former principal officer, J. Morton Davis ("Davis"). Blair and Davis now move, pursuant to 9 U.S.C. §§ 3 and 4, to stay this action, and to compel arbitration of Thomas' claims against them.

## I.

The Complaint in this action was filed on March 3, 1995. On July 5, 1995, this Court granted Thomas' application for a four month extension of time in which to serve Davis. (Exhibit B to Affidavit of Max Folkenflik ("Folkenflik Aff.")). On July 18, 1995, the parties stipulated to extend the time of the defendants to respond to the Complaint until 30 days after this Court's ruling on the then pending motion to dismiss in *Baxter v. A.R. Baron & Co., Inc.*, 94 Civ. 3913(JGK). (Stipulation, attached as Exhibit C to Folkenflik Aff.). *Baxter* involves the same defendants and many of the same issues as Thomas' suit. On October 11, 1996, this Court issued its decision in *Baxter*, granting, in part, and denying in part, the motion to dismiss. *Baxter v. A.R. Baron & Co., Inc.*, 1996 WL 586338 (S.D.N.Y. October 11, 1996).

Thomas' claims arise out of alleged "misrepresentations, fraudulent omissions, market manipulations and insider trades, in certain stock sold by D.H. Blair and A.R. Baron including in particular, the stock of Health Professionals, Inc. ('HPI'), which was sold to plaintiff by D.H. Blair, broker, Jeffrey Weissman based on numerous fraudulent misstatements and omissions...." (Complaint at ¶ 1). Thomas alleges that "securities of HPI were actively sold and manipulated by defendants Jeffrey Weissman and Andrew Bressman ... while they were brokers at D.H. Blair, as well as by other D.H. Blair brokers, up to and through the first purchases by plaintiff[ ] .... these activities were conducted with the knowledge of and under the general supervision of [Davis] who was an owner of D.H. Blair, its principal officer, and one of the officers, if not the primary officer, to whom Jeffrey Weissman reported. Davis was personally involved in the various transactions between D.H. Blair and HPI...." (*Id.* at ¶ 3).

Thomas's Complaint covers transactions that occurred between 1990 and 1993. (See *id.* at ¶¶ 17, 96). At the end of 1991, defendant Baron Group ("Baron") was formed. (*Id.* at ¶ 76). In 1992, Thomas, at the behest of Blair and its employees, transferred the bulk of his shares at Blair to a Texas dis-

count broker but transferred some of his shares of HPI from his account at Blair to an account at Baron. (*Id.* at ¶¶ 48–49). Thomas alleges that Blair and Davis "loomed large" in Baron's formation and success. (*Id.* at ¶ 76).

In opening up his brokerage account with Blair, Thomas signed a "Cash Account Agreement" with Blair. That Cash Account Agreement states "I agree as follows with respect to all of my accounts, in which I have an interest alone or with others, which I have opened or open in the future, with you." (Cash Account Agreement, attached as Exhibit A to Folkenflik Aff.). The Cash Account Agreement contains an arbitration clause which states that "[a]ll controversies or disputes between us of any kind shall be settled by arbitration. Without limiting the foregoing, this arbitration agreement specifically applies to all controversies or disputes arising out of or relating to (1) any aspect of this account or any other account in which I now or in the future have or in the past had an interest; (2) transactions entered into prior, on, or subsequent to the date of this agreement; and (3) the construction, performance, or alleged breach of this or any other agreement entered into between us at any time." (*Id.*).

The Cash Account Agreement also provides that "[a]ny arbitration under this agreement shall be held before an arbitration facility of the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. or another self-regulatory organization before which I have the right to have the controversy or dispute arbitrated and in accordance with the rules of such organization then obtaining. The undersigned may elect in the first instance whether arbitration shall be by the New York Stock Exchange, Inc or the National Association of Securities Dealers, Inc., or otherwise as provided in this paragraph, but if the undersigned fails to make such election, . . . then you may make such election." (*Id.*).

## II.

■ The defendants' petition to compel arbitration is governed by the Federal Arbitration Act, which provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2; *see also In re Home Insurance Co.*, 908 F.Supp. 180, 183 (S.D.N.Y.1995). Unless the parties explicitly provide otherwise, this Court, rather than an arbitrator, determines whether the parties did in fact agree to arbitration. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, ——, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995); *Paine-Webber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir.1996).

■ Whether an agreement to arbitrate governs a particular dispute is essentially a matter of contract interpretation. *See Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 19 (2d Cir.1995) ("Federal arbitration policy respects arbitration agreements as contracts that are enforceable in the same way as any other contract"); *see also Home Insurance Co.*, 908 F.Supp. at 183. Any doubts about the scope of arbitrable issues should be resolved in favor or arbitration. *Collins*, 58 F.3d 16 at 19 (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983)); *see also United States Fire Insurance Co. v. National Gypsum Co.*, 101 F.3d 813, 816 (2d Cir.1996).

■ Thomas acknowledges that all of his claims that concern transactions that occurred while his holdings were in an account at Blair are covered by the arbitration clause, and the overwhelming number of transactions at issue in this case apparently occurred while the securities were held in Thomas' account at Blair. (See Reply Affidavit of Edward T. McDermott at 2). However, Thomas argues that he is not required to arbitrate his claims against Blair that arose out of transactions that occurred after some of his securities were transferred to Baron. Thomas argues that he does not have to arbitrate these claims because the Cash Account Agreement states that it applies only "to all of my [Thomas's] accounts . . . with you." (Transcript of April 18, 1997 Argument ("Tr.") at 14). Thomas argues that the phrase "all of my accounts . . . with you," cannot be read to include claims that

arose from transactions occurring when he had an account at Baron, because Baron was not a signatory to the Cash Account Agreement, and therefore cannot be considered covered by the term "you."

In response, Blair argues that the phrase "with you" does not refer to the accounts covered by the Cash Account Agreement, but instead merely identifies the parties to the Cash Account Agreement. Blair argues that the Cash Account Agreement should be read as stating, in effect, that "I agree with you as follows with respect to all of my accounts, in which I have an interest alone or with others, which I have opened or open in the future." (See Tr. at 6). Moreover, Blair argues that, regardless of the introduction to the Cash Account Agreement, the arbitration clause explicitly covers "[a]ll controversies or disputes between us of any kind ... "

Given the breadth of the arbitration clause, and the policy, where parties have agreed to arbitration, that any doubt about the scope of arbitrable issues should be resolved in favor of arbitration, there is a strong argument that the parties agreed that disputes between the plaintiff and Blair should be resolved by arbitration, even where the dispute concerns transactions that occurred after securities were transferred to Baron. However, the Court does not have to finally decide this issue because the parties, in executing the Cash Account Agreement, agreed that the resolution of this issue is itself subject to arbitration.

The Cash Account Agreement contains an arbitration clause that covers "[a]ll controversies or disputes between us of any kind ... Without limiting the foregoing, this arbitration agreement specifically applies to all controversies or disputes arising out of or relating to ... the construction, performance, or alleged breach of this or any other agreement entered into between us at any time." The parties' dispute over the scope of the Cash Account Agreement is clearly a dispute or controversy over the construction of the Cash Account Agreement. Thus, by the terms of their own contractual agreement, the parties have agreed that this dispute should be decided, not by this Court, but by an arbitrator.[1]

Davis also seeks to compel arbitration of the claims against him. In *Roby v. Corp. of Lloyd's,* 996 F.2d 1353 (2d Cir.), *cert. denied,* 510 U.S. 945, 114 S.Ct. 385, 126 L.Ed.2d 333 (1993), the Court of Appeals stated "[c]ourts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." *Roby,* 996 F.2d at 1360. However, in *Cotton v. Slone,* 4 F.3d 176 (2d Cir.1993), the Court of Appeals noted this quotation from *Roby,* but stated that the question of whether an employee of an entity that is a party to the arbitration agreement is also covered by that arbitration clause was not decided in *Roby. Id.* at 177.

Irrespective of whether the statement in *Roby* can be considered binding authority on this Court, it is in line with wide judicial consensus on this issue. *See Nesslage v. York Securities, Inc.* 823 F.2d 231, 233–34 (8th Cir.1987); *D.C. Perry v. ICN Pharmaceuticals,* 866 F.Supp. 120, 121 (S.D.N.Y. 1994); *Scher v. Bear Stearns & Co., Inc.,* 723 F.Supp. 211, 216–17 (S.D.N.Y.1989); *Brener v. Becker Paribas, Inc.* 628 F.Supp. 442, 451 (S.D.N.Y.1985). Moreover, as the court in *Roby* stated, were claims against the employees or disclosed agents not also subject to arbitration, "it would be too easy to circumvent the agreements by naming individuals as defendants instead of the entity Agents themselves." *Roby,* 996 F.2d at 1360.

Thomas argues that a finding that Davis is covered by the arbitration clause is inconsistent with the Supreme Court's decision in *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). However, the Supreme Court in *Kaplan* did not find that claims against an employee of an entity that is a party to an

---

1. In finding that the proper interpretation of the Cash Account Agreement should be determined by an arbitrator, this Court is not yielding to the arbitrator on the question of arbitrability. Instead, the Court has determined that a specific issue, whether the Cash Account Agreement covers transactions that occurred when Thomas's account was at Baron, is subject to resolution by an arbitrator rather than this Court.

arbitration agreement did not have to be submitted to arbitration. The Court in *Kaplan* was faced with the issue of whether the court or the arbitrator should decide the question of whether a non-party to an arbitration agreement had agreed to arbitrate a dispute. *Id.* at 1923–25. In this case, Thomas was in fact a party to the arbitration agreement with Blair, and *Roby,* and the other cases cited above, make clear that in such circumstances the arbitration agreement can also be relied upon by the agents and employees of an entity which is a party to the agreement.

■ Thomas also argues that the claims against Davis are not arbitrable because they arose out of different conduct than the claims against Blair. Thomas is correct that in order to be covered by their employer's arbitration agreement, the claims against the employee must arise under the same facts as the claims against the entity itself. *See Perry,* 866 F.Supp. at 121; *see also Roby,* 996 F.2d at 1360. However, Thomas has made no factual assertions specifying conduct by Davis, distinct from his role within Blair, with respect to the transactions at issue in the Complaint. The claims against Davis arise from the same facts as the claims against Blair, and all of these claims are covered by the arbitration clause.

### III.

■ Thomas argues that even if his claims against the defendants were originally subject to arbitration, the defendants have waived any right to arbitration. The Court of Appeals has "emphasized that there is a strong presumption in favor of arbitration .... and that waiver of arbitration is not to be lightly inferred." *Cotton,* 4 F.3d at 179 (internal citations and quotations omitted); *see also Doctor's Associates, Inc. v. Distajo,* 107 F.3d 126, 130 (2d Cir.1997). However, "[w]aiver will be inferred when a party engages in protracted litigation that results in prejudice to the opposing party." *Cotton,* 4 F.3d at 179 (internal citations omitted); *see also Doctor's Associates,* 107 F.3d at 131. This prejudice can take the form of unnecessary delay or expense. *See Doctor's Associates,* 107 F.3d at 131; *Cotton,* 4 F.3d at 179.

Thomas argues that the defendants have waived their right to arbitration because they waited until a year and a half after he filed his complaint to seek arbitration. This argument is without merit. Both parties stipulated to stay this action pending resolution of the motion to dismiss in *Baxter.* Thus, any delay in litigating the case is the responsibility of both parties. Moreover, because of the stay, no actual litigation of this case has occurred. The delay of this action has not prejudiced Thomas by forcing him to incur litigation expenses that would be rendered unnecessary by the case ultimately being referred to an arbitrator. Thomas chose to save litigation expenses by awaiting the outcome of the motion in the *Baxter* case. Thus, there are no grounds to infer a waiver by the defendants. *See Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 122 (2d Cir.1991); *McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.,* 858 F.2d 825, 833 (2d Cir.1988).

■ As explained above, all of the claims against the defendants are subject to arbitration. The Cash Account Agreement affords Thomas the first opportunity to elect the body before which the arbitration shall be conducted, stating that he "may elect in the first instance whether arbitration shall be by the New York Stock Exchange, Inc or the National Association of Securities Dealers, Inc., or otherwise as provided in this paragraph, but if the undersigned fails to make such election, ... then [the defendants] may make such election." The defendants argue that Thomas failed to make such an election and therefore, under the terms of the Cash Account Agreement, they should be allowed to determine the body before which the arbitration should be conducted.

This waiver argument is without merit. In a letter dated November 11, 1996, Thomas contested whether his claims against the defendants were subject to arbitration. (November 11, 1996 letter, attached as Exhibit D to Notice of Motion). At the same time, however, Thomas stated that if his claims were subject to arbitration, he elects that the arbitration be conducted by the American Arbitration Association ("AAA") or the Na-

tional Association of Securities Dealers ("NASD"). (*Id.*). This election was sufficient to exercise his rights under the agreement. Thus, because this election was valid, but the defendants are not members of the AAA, and therefore the arbitration cannot be conducted before that body, the arbitration shall be conducted before the NASD in accordance with that association's rules.

## CONCLUSION

All of the claims against Blair and Davis are subject to arbitration in accordance with this Opinion. Therefore, Blair and Davis's motion to stay the claims against them and for this Court to compel arbitration is granted. The arbitration shall be conducted before the NASDn in accordance with that association's rules.

**SO ORDERED.**

## *OPINION AND ORDER ON REARGUMENT*

In an Opinion and Order dated June 3, 1997, this Court found that all of the claims the plaintiff asserted against D.H. Blair ("Blair") and J. Morton Davis were subject to arbitration. *Thomas v. A.R. Baron & Co., Inc.*, 967 F.Supp. 785, 789 (S.D.N.Y.1997). Therefore, this Court granted Blair and Davis's motion to stay the claims against them and to compel arbitration. *Id.* The plaintiff now moves for reconsideration of that Opinion and Order pursuant to Local Rule 6.3, formerly Local Rule 3(j).

A motion for reargument pursuant to Local Rule 6.3 requires the moving party to demonstrate that the Court overlooked the controlling decisions or factual matters that were put before the Court in the underlying motion. *See Peker v. Fader*, 965 F.Supp. 454, 460–61 (S.D.N.Y.1997); *Walsh v. McGee*, 918 F.Supp. 107, 110 (S.D.N.Y.1996). Local Rule 6.3 is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Walsh*, 918 F.Supp. at 110; *see also Peker*, 965 F.Supp. at 460–61; *United States v. Mason Tenders Dist. Council of Greater New York*, 909 F.Supp. 882, 889 (S.D.N.Y.1995). The Court must not allow reargument to be a substitute for appealing a final judgment or to permit a party to reargue those issues already considered merely because a party does not like the outcome. *See In re Houbigant*, 914 F.Supp. 997, 1001 (S.D.N.Y.1996); *Mason Tenders*, 909 F.Supp. at 889; *see also Peker*, 965 F.Supp. at 460–61.

In support of his motion for reargument, the plaintiff argues that this Court misinterpreted the Supreme Court's holding in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) and the decision of the Court of Appeals for the Second Circuit in *Roby v. Corp. of Lloyd's*, 996 F.2d 1353 (2d Cir.), *cert. denied*, 510 U.S. 945, 114 S.Ct. 385, 126 L.Ed.2d 333 (1993). However, the proper interpretation of these cases was a central issue this Court decided in its initial opinion and this Court discussed both decisions at length in that opinion. There is nothing contained in the plaintiff's papers that leads the Court to reconsider the correctness of the prior opinion.

The plaintiff has not demonstrated that the Court overlooked either controlling decisions or factual matters that were put before the Court. Instead, the plaintiff simply disagrees with the conclusions reached by the Court and attempts to raise the same arguments that were addressed and rejected by the Court in its initial decision. Therefore, there are no grounds for reargument.

## CONCLUSION

The plaintiff's motion for reargument is denied.

**SO ORDERED.**