## BROWNSTONE INVESTMENT GROUP, LLC, Plaintiff,

v.

## Gordon LEVEY, Defendant.

## Gordon Levey, Counterclaim and Third–Party Plaintiff,

v.

## Brownstone Investment Group, LLC, Douglas B. Lowey, Stephen B. Lowey, Barret Naylor, and Lowey Family Investment LLC, Counterclaim and Third–Party Defendants.

### No. 06 CV 0747(VM).

United States District Court, S.D. New York.

Sept. 17, 2007.

538

Harry Simeon Davis, William Hayward Gussman, Schulte Roth & Zabel LLP (NY), New York, NY, Jr., for Brownstone Inv. Group.

Jamie Mark Brickell, Stacey Marie Faraci, Ronald Andrew Giller Pryor Cashman LLP, New York, NY, Steven E. Mellen, Winget, Spadafora & Schwartzberg, LLP, New York, NY, for Gordon Levy.

Eric B. Fisher, Rachel Kathryn Marcoccia, Morgenstern Jacbos & Blue, LLC (NY), New York, NY, for Barret Naylor.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

### I. BACKGROUND

Plaintiff and counterclaim/third-party defendant Brownstone Investment Group, LLC ("Brownstone") brought this action against defendant and counterclaim/third-party plaintiff Gordon Levey ("Levey") for injunctive relief and damages, asserting claims against Levey of breach of judiciary duty and misappropriation of trade secrets. Levey filed an answer alleging various affirmative defenses and counterclaims against Brownstone and third-party defendants Douglas B. Lowey, Stephen B. Lowey and Lowey Family Investment LLC (collectively referred to as "Brownstone"). Levey also asserted a third-party action against third-party defendant Barret Naylor ("Naylor") (Brownstone and Naylor

collectively referred to as "Defendants"). Levey's pleadings in these actions did not assert a right to arbitration. Following substantial pretrial discovery motion practice, Levey substituted counsel and at that point, approximately ten and one half months after the commencement of this case, notified Brownstone that he would seek arbitration before the National Association of Securities Dealers ("NASD"). Claiming that prior counsel had failed to advise him of his right to arbitration, Levey then sought an order from this Court to compel arbitration and stay this litigation.

By Order dated June 12, 2007, Magistrate Judge Henry B. Pitman, to whom this matter had been referred for supervision of pretrial proceedings, issued a Report and Recommendation (the "Report") finding that Levey had not waived his right to arbitration and that Defendants would not be prejudiced by submitting the dispute to arbitration at this point. Accordingly, the Report recommends that Levey's motion to stay this action and compel arbitration be granted. Brownstone and Naylor separately filed timely objections to the Report challenging its findings and conclusions. For the reasons stated below, the Court adopts the recommendation of the Report in its entirety.

## II. STANDARD OF REVIEW

A district court evaluating a Magistrate Judge's report may adopt those portions to which no "specific, written objection" is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law. See Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Greene v. WCI Holdings Corp., 956 F.Supp. 509, 513 (S.D.N.Y.1997). "Where a party makes a 'specific written objection ... after being served with a copy of the [magis-

trate judge's] recommended disposition,' however, the district court is required to make a de novo determination regarding those parts of the report." Cespedes v. Coughlin, 956 F.Supp. 454, 463 (S.D.N.Y. 1997) (citing United States v. Raddatz, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). The Court is not required to review any portion of a Magistrate Judge's report that is not the subject of an objection. See Thomas, 474 U.S. at 149, 106 S.Ct. 466. A district judge may accept, set aside, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge as to such matters. See Fed.R.Civ.P. 72(a); DeLuca v. Lord, 858 F.Supp. 1330, 1345 (S.D.N.Y.1994).

## III. DISCUSSION

Having conducted a de novo review of the full factual record in this litigation, including the pleadings, and the parties' respective papers submitted in connection with the underlying motion and arguments in this proceeding, as well as the Report and applicable legal authorities, the Court concludes that the findings, reasoning, and legal support for the recommendation made in the Report are warranted.

Defendants' primary objection is that the Report erred in finding that a waiver of Levey's right to arbitration had not occurred here, despite Levey's having engaged in substantial litigation and his delay of over ten months in seeking arbitration, because Defendants had not demonstrated that they would be seriously prejudiced if the underlying dispute were to proceed to arbitration at this stage. Defendants allege that Magistrate Judge Pitman misread or misapplied the standard for a showing of prejudice and erroneously concluded that Defendants had not shown that they had incurred any extraordinary expenses in conducting the litigation. Defendants ar-

gue that in fact they suffered prejudice because Levey, having failed to invoke his right to arbitration while Defendants incurred unnecessary delay and expense, took advantage of extensive litigation discovery procedures not available in NASD arbitration, including depositions and document production from parties and non-parties. *See S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir.1998); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25–27 (2d Cir.1995); *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993); *Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.P.*, 49 F.Supp.2d 331, 340 (S.D.N.Y.1999).

■ The Court finds insufficient merit in these arguments. As an initial matter, any analysis of an arbitration dispute must be placed in its proper framework, which Defendants ignore: the strong presumption in favor of arbitration, and correspondingly against a finding of waiver, created by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. *See Leadertex,* 67 F.3d at 25 ("Whether or not there has been a waiver is decided in the context of the case, with a healthy regard for the policy of promoting arbitration."). That presumption compels that any doubts be resolved in favor of arbitration. *See id.* (*citing Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (declaring that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense or arbitrability")); *see also Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir.2002); *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir.1985).

■ As the Report acknowledges, Levey's delay of more than ten months in seeking arbitration is insufficient by itself to support a finding of waiver. *See* Report at 11 (*citing Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 122 (2d Cir.1991)). Rather, the weight of delay as a consideration in a court's assessment of a claim of waiver, as the Report also correctly noted, must be viewed in relation to the amount of litigation that has occurred and any resulting actual prejudice. *See Leadertex,* 67 F.3d at 25; *see also PPG Indus. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108 (2d Cir.1997).

■ Concerning the issues of how much litigation the parties have already pursued and alleged prejudice stemming from it, including expenses Defendants have incurred, the Court is not persuaded that the circumstances warrant a finding of waiver. First, Brownstone's objections are seriously undermined by its own actions. It was Brownstone that chose to commence declaratory judgment litigation in this Court and to pursue it as aggressively as it has. Among other remedies, Brownstone sought a preliminary injunction and expedited discovery, including some of the same depositions which it is now raising as grounds for its prejudice and using as a weapon against Levey. When these claims for relief were filed, this Court sought to discourage them as premature or not warranting extraordinary judicial intervention and urged the parties to pursue consensual means by which Defendants' request for preliminary relief could be more readily resolved.

■ This consideration assumes greater significance taking into account that the parties' underlying dispute was clearly arbitrable from the start under their agreement. Arbitration is a two-way street, an alternative dispute resolution procedure presumably open to either party bound by an agreement, and that each can invoke as appropriate. Having commenced this suit

to resolve claims that could have been properly asserted in arbitration, Brownstone cannot now seek to lay at Levey's doorstep alone the full weight of Brownstone's litigation expenses and claim resulting prejudice, a large measure for which Brownstone itself may be responsible. When the litigation commenced, Levey responded in a manner it had a right to: by opposing extraordinary injunctive relief and mounting a defense through an answer with affirmative defenses, counterclaims and cross-claims. *See Rush,* 779 F.2d at 889 (defendants' filing a motion to dismiss, engaging in discovery and then answering the complaint after an eight-month delay in seeking arbitration was not sufficient to constitute waiver). Moreover, as the Second Circuit has made clear, "pretrial expense and delay—unfortunately inherent in litigation—without more, do not constitute prejudice sufficient to support a finding of waiver." *Leadertex,* 67 F.3d at 26.

Second, the Court has considered that, whatever the extent of pretrial proceedings that have taken place to date, discovery is far from complete and the case is still a long way from being ready for trial. *See Leadertex,* 67 F.3d at 25 ("The proximity of a trial date when arbitration is sought is also relevant."). Indeed, Brownstone complains about an alleged imbalance in the amount of discovery taken to date, which it claims favors Levey, and that if the matter were now to go to arbitration, Brownstone would be denied an opportunity to move for summary judgment. These arguments confirm the extensive amount of litigation yet ahead if the action remained before this Court. Thus, Defendants' argument would stand the notion of actual prejudice on its head. For it essentially ascribes prejudice to their being deprived of a full opportunity to bring about even more prejudice upon themselves than what they here claim they have already suffered. In effect, Defen-

dants seek to finish litigation in this forum and thereby incur what probably would be greater delay and expense than they would experience if the parties were to commence arbitration now, making use, as appropriate, of the record created in this action.

In this connection, the Court takes note that to pursue this litigation to full resolution would entail completing the substantial amount of discovery Defendants point out is still outstanding—even considering discovery demanded by their side alone—then the briefing and resolution of the dispositive motions they object to being divested of the occasion to file, and possibly trial, with potential additional motions, pre- and post-trial (not to mention the prospect of additional requests for reconsiderations and appeals): This process, if so carried to conclusion, could extend well in excess of two years. By contrast, proceeding promptly to arbitration on a leaner record, much of which could be based on materials already created in discovery to date, might enable the parties to reach the merits of the dispute much sooner. Weighing the posture of the action at this stage, the Court considers that granting the motion to compel arbitration would serve not only a central goal of the FAA to promote more expeditious and economical resolution of disputes, but also the statute's overriding purpose " 'to ensure judicial enforcement of privately made agreements to arbitrate.' " *Rush,* 779 F.2d at 888 (*quoting Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 219, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)).

On this basis, the Court cannot credit Defendants' objections and claims of prejudice by reason of delay and costs. For, given the status of pre-trial proceedings at this point, this case does not reach the level of prejudice grounded on the amount and delay and pre-trial proceedings com-

pleted that the Second Circuit has held sufficient to warrant a finding a waiver of arbitration. The standard was reinforced by the Circuit Court in *Shearson*. There, the court, finding no waiver where the parties were involved in litigation for over three years before an arbitration right was asserted, noted that "[i]n *Rush*, where the defendants participated in eight months of litigation, took extensive discovery, and brought a motion to dismiss before invoking the arbitration clause, we held there was no waiver because the expense and delay of eight months of litigation was not sufficiently prejudicial." 944 F.2d at 122 (*citing Rush*, 779 F.2d at 887). By contrast, the Second Circuit found sufficient basis for waiver under much more compelling circumstances in *Leadertex*, where defendant's claim to compel arbitration was made "[o]nly at the eleventh hour, with trial imminent," and after the completion of discovery and the filing of a summary judgment motion. *See* 67 F.3d at 24, 26. Similarly, a finding of waiver was affirmed in *S & R*, where, among other considerations, the right to arbitrate was invoked "on the eve of trial" and after the party seeking arbitration had actively participated in litigation for fifteen months, including filing a motion to dismiss. 159 F.3d at 83; *see also Com–Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 938 F.2d 1574, 1577–78 (2d Cir.1991) (waiver found where the party seeking to compel arbitration participated in eighteen months of litigation, including dispositive motions, and sought arbitration by motion four months prior to the date set for trial); *Demsey & Assocs., Inc. v. S.S. Sea Star*, 461 F.2d 1009, 1018 (2d Cir.1972) (litigation prior to assertion of arbitration request included full trial on the merits).

With regard to whether prejudice to Defendants arose from the discovery that has occurred in the action to date, specifically whether Levey has obtained any discovery in litigation through procedures not available in arbitration, the Court finds Defendants' objections unconvincing. As this Court reads *Leadertex*, Magistrate Judge Pitman did not misread or misapply relevant Second Circuit doctrine. The Magistrate Judge's application of the test was especially proper in the light of other pertinent Second Circuit case law. *See S & R*, 159 F.3d at 84; *PPG*, 128 F.3d at 109; *Shearson*, 944 F.2d at 122; *Rush*, 779 F.2d at 888.

The Report cites *Leadertex* for the proposition that prejudice does not occur where the party seeking to compel arbitration " 'obtain[s] no facts in discovery that would have been unavailable arbitration.' " (Report at 13 (*quoting Leadertex*, 67 F.3d at 26).) It then found that Defendants had not demonstrated prejudice because they failed to identify any specific documents or information obtained through depositions that Levey acquired in discovery that he would not have been able to obtain in NASD arbitration. Brownstone argues that the language quoted by the Report was not a statement of a legal standard for prejudice, but rather an observation by the Circuit Court about a matter that both parties there had acknowledged. *See Leadertex*, 67 F.3d at 26. Three other aspects of *Leadertex* provide further guidance that refute Brownstone's contention. First, while the Circuit Court makes reference to the parties' acknowledgment that the defendant invoking arbitration had obtained no facts in discovery that would have been unavailable in arbitration, in the sentence immediately preceding that remark the Circuit Court asserted that: "Although Morganton did pursue various avenues of discovery, *it does not follow that Leadertex was prejudiced.*" *Id.* (emphasis added). Second, in the sentence that immediately follows that statement, the court reiterated that "[s]ince it has divulged no significant information in discovery, the only prejudice *Leadertex* can claim is the

expense and delay inherent in the procedure .... Waiver may not therefore stand firmly on defendant's use of discovery." (*Id.*) And third, the form of actual prejudice the court did find sufficient stemmed not from the duration, expense, or procedures of the litigation that had occurred, but from economic harm *Leadertex'*s business suffered because its goods were being held from sale unnecessarily during the period of delay and litigation.

These considerations suggest that, regardless of how it is established that the party seeking arbitration has obtained no special benefit from the information acquired through litigation discovery— whether because the parties affirmatively so stipulate, or because, as here, the party opposing arbitration is unable to identify specific information obtained by the adversary through discovery that supports the opponent's claim of prejudice—the *Leadertex* Court attached weight to that consideration in determining that sufficient prejudice to Leadertex could not be grounded on this basis alone. The basis for this factor seems clear. If the party asserting waiver of arbitration cannot convincingly demonstrate some unique or material way in which it would be placed at a substantial disadvantage by reason of the discovery taken in litigation—other than delay or expense with nothing more—it is difficult to justify a determination that the opposing party has suffered sufficient prejudice. In any event, on this point *Leadertex* merely confirms what the relevant case law already holds. *See S & R*, 159 F.3d at 84 (citing *Rush* for the proposition that "no prejudice where party opposing arbitration could point to no specific discovery that was not relevant to non-arbitrable claims"); *PPG*, 128 F.3d at 109 (noting that the party opposing arbitration "has not specified ... what portion of the ... information [obtained by the other party through litigation] ultimately would be unavailable in the arbitral forum").

Moreover, the *Leadertex* Court's statement on the same issue simply reaffirms existing law in another respect: that the issue of waiver "is fact-specific and there are no bright-line rules" to determine the prejudice component of the inquiry. *S & R Company*, 159 F.3d at 83 (*citing Leadertex*, 67 F.3d at 25). Under these circumstances, that Defendants could point to no specific documents or other information Levey had obtained through litigation discovery that he would not be able to acquire in arbitration constitutes but one factor that in this case could properly support a finding that Defendants have not sufficiently demonstrated actual prejudice from proceeding to arbitration despite the litigation that has occurred to date.

But whether or not this consideration is deemed sufficient here to determine the prejudice element of the waiver issue, the Court cannot endorse the more expansive reading of case law that Brownstone advances. Brownstone argues that because Levey engaged in extensive discovery through litigation procedures unavailable in arbitration, that circumstance "is sufficient, *in and of itself,* to establish prejudice as a matter of law under Second Circuit precedent regardless of the substance of the underlying facts that he learned as a result of that pretrial discovery." (Plaintiff and Counterclaim Defendant Brownstone Investment Group, LLC and Third-party Defendants Douglas B. Lowey and Lowey Family Investment LLC's Memorandum of Law in Support of Its Objections to the Report and Recommendation of Magistrate Judge Harry B. Pitman, dated June 12, 2007, dated July 16, 2007, at 18.) In support of this proposition, Brownstone cites language from cases stating that "prejudice results 'when a party seeking to compel arbitration engages in discovery procedures not available in arbitration ....'" *S & R Compa-*

*ny,* 159 F.3d at 83–84 (*quoting Cotton v. Slone,* 4 F.3d 176, 179 (2d Cir.1993)); *see also PPG Indus. Inc. v. Webster Auto Parts Inc.,* 128 F.3d 103, 109 (2d Cir.1997); *Zwitserse Maatschappij Van Levensverzekering En Lijfrente, N.V. v. ABN Int'l Capital Mkts. Corp.,* 996 F.2d 1478, 1479 (2d Cir.1993).

 But the language cannot be read as universal dogma, or as a rule to be applied in isolation of other facts. The very same cases also counsel that the waiver inquiry is fact-specific, in that it depends on the facts of each case, and cannot be determined by any one bright-line test. *See S & R,* 159 F.3d at 83; *PPG,* 128 F.3d at 108; *Leadertex* 67 F.3d at 25. None of these cases stands for the proposition, as Brownstone urges, that a finding of prejudice may automatically or categorically follow by mere reason of the party engaging in litigation discovery, in and of itself. *Leadertex* explicitly says as much in the Circuit Court's remark that although the district court had found prejudice because the defendant had taken advantage of the liberal discovery procedures available under the federal rules before seeking arbitration, and that the district court's finding was not clearly erroneous, "whether [it] was sufficient to effect a waiver requires further analysis." 67 F.3d at 26. Upon such further inquiry the Circuit Court then specifically declared that, despite defendant's having engaged in substantial discovery, "waiver may not ... stand firmly on defendant's use of discovery." *Id.*

More significantly, in each of these cases, the prejudice the Circuit Court upheld was grounded on some unique circumstance that derived from the extent of the litigation that had occurred and included the discovery taken as just one element for consideration, rather than resting on the mere occurrence of the discovery alone. A common thread that emerges from the cases in which waiver was found where a party who sought arbitration had previously engaged in extensive litigation is an aspect that smacks of deliberate conduct or bad faith designed to secure a substantial benefit at the expense of the other party. This circumstance occurs, for example, to the extent that the party invoking arbitration purposely and unfairly avails itself of judicial resources and uses the results of those proceedings to gain an advantage that results in substantial prejudice to the opponent. The scope of the judicial proceedings that occur, including the amount of discovery and litigation of substantial issues going to the merits, may then enable that party to acquire special insight concerning the viability of its claims that may persuade it to switch course, taking a chance to start anew in another forum. *See Rush,* 779 F.2d at 890 (referring to an instance in which " 'a party sensing an adverse court decision [is, in effect, allowed] a second chance in another forum' ") (*quoting Jones Motor Co. v. Chauffeurs, Teamsters and Helpers Local Union,* 671 F.2d 38, 43 (1st Cir.1982)). In these situations the opponent consequentially suffers unique material harm, or is compelled detrimentally to alter his position, or finds its options substantially foreclosed. *See, e.g., S & R,* 159 F.3d at 84 (parties seeking arbitration engaged in extensive litigation pertaining to "substantial issues going to the merits" and thus obtained a benefit from information they would not be able to acquire in arbitration (*quoting Doctor's Assocs., Inc. v. Distajo,* 66 F.3d 438, 457 (2d Cir.1995), *aff'd in part, rev'd in part,* 107 F.3d 126 (2d Cir.1997))); *Zwitserse,* 996 F.2d at 1479 (noting that "in certain circumstances a party initiating judicial proceedings may waive its right to arbitration ... when [that] party has unfairly used litigation prior to commencing arbitration in a way that might prejudice the opposing party") (*citing Rush,* 779 F.2d at 887); *Doctor's As-*

*socs.*, 107 F.3d at 134 ("[P]rejudice as defined by our cases refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.").

Reflecting the foregoing principle, in *Cotton*, the court found decisive that the defendant had fully litigated to judgment in court, made several motions, including a motion for summary judgment, and failed to take an appeal under the Federal Arbitration Act of the denial of a motion to compel arbitration. *See* 4 F.3d at 179–80. In *PPG*, the defendant similarly litigated one action to completion and filed substantive motions before requesting arbitration in a related action based on the same facts; the defendant likewise failed to take an appeal of a motion to compel arbitration, but continued to litigate after the opportunity to appeal had passed. *See* 128 F.3d at 109–10. And in *Zwitserse*, the court stressed that the party invoking arbitration had commenced and fully completed a foreign preliminary hearing proceeding in which a record of discovery was created and misled the opponent into believing that litigation would follow, but sought arbitration instead.

Tellingly, the *PPG* Court, while acknowledging that through discovery in litigation the defendant had obtained substantial information beneficial to its counterclaims that it may not have been able to acquire through arbitration, made three observations relevant to this Court's determination here. First, the Circuit Court essentially endorsed the *Leadertex* factor that there is no sufficient showing of prejudice where there is no indication of what specific information would have been unavailable in arbitration. *See* 128 F.3d at 109 ("[The party invoking arbitration] has not specified . . . what portion of the foregoing infor-

mation ultimately would be unavailable in the arbitral forum.") (*citing Leadertex,* 67 F.3d at 26). Second, the court declined to decide "whether the amount of discovery, by itself, is sufficient to establish prejudice in this case." *Id.* at 110. Third, to the extent the taking of discovery was a relevant consideration in *PPG*, it stemmed from the unique circumstances of two related cases consolidated and litigated together. In that event, the Circuit Court noted that waiver occurs where one party "avails itself of judicial resources in one action, then attempts to compel arbitration in a second action involving the same facts and legal issues." *Id.; see also Doctor's Assocs.,* 107 F.3d at 134.

Applying the doctrine of these cases properly read to the circumstances of the action at hand, the Court finds several considerations compelling in support of a determination that no waiver of arbitration has occurred: (1) Defendants have not demonstrated what specific information Levey has obtained through litigation that he would not be able to acquire through an arbitration proceeding and how use of that information in arbitration would unfairly prejudice Defendants; (2) whatever information Levey has obtained in discovery he now possesses not because he invoked judicial resources to obtain such discovery and information to later gain an advantage in the arbitration he seeks; rather, it was Brownstone that commenced court litigation and insisted on pursuing the expedited discovery about which Defendants now raise objections; (3) the proceedings in this Court have not yet sufficiently advanced to a point at which Levey has improperly availed himself of judicial resources—in delay, expense, or change in the position of the Defendants—to cross the threshold of inherent unfairness to Defendants.

The preceding analysis recognizes certain realities and practicalities of litigation, illustrated by the case at hand, that Brownstone's argument ignores. It is not highly unusual for parties to engage in substantial discovery through depositions, document requests, or subpoenas before one of them invokes a contractual right to arbitrate the claims at issue. Conceivably, the party seeking arbitration may legitimately be unaware, as Levey claims here, that the dispute is arbitrable and may determine that it is so only after substantial litigation has occurred. Or, a complaint may allege both arbitratable and non-arbitrable claims, so the parties may litigate until the point at which such claims may be properly separated. *See Rush,* 779 F.2d at 888, 889. If the mere use of discovery procedures not available in arbitration were enough by itself to constitute reason for a finding of sufficient prejudice, in most cases it would result in a virtually automatic waiver of arbitration, regardless of the content, materiality, or demonstrable prejudice associated with the information so acquired.[1]

The Court also finds no merit in Naylor's separate objections alleging prejudice because this Court dismissed Levey's claims of fraud against him, and asserting that if the case remained in this Court Levey would require leave to file an amended complaint. These arguments were properly addressed by Magistrate Judge Pitman's observation that the Court's dismissal of the claim against Naylor was granted without prejudice, leaving Levey free to file a new action should he decide to reinstitute litigation against Naylor.

The Court has reviewed the other arguments made by Brownstone and Naylor and finds no merit in them. Accordingly, for substantially the reasons set forth in the Report and further elaborated in this decision, the Court adopts the Report's recommendation in its entirety.

## IV. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the Report and Recommendation of Magistrate Judge Henry B. Pitman dated June 12, 2007 (Docket No. 83) is adopted in its entirety, and the motion (Docket No. 72) of defendant and counterclaim/third-party plaintiff, Gordon Levey, to stay this action and compel arbitration is GRANTED.

The Clerk of Court is directed to close this case, subject to its being reopened for the purpose of any additional action necessary following the arbitration proceedings referred to above.

**SO ORDERED.**

*REPORT AND RECOMMENDATION*

PITMAN, United States Magistrate Judge.

TO THE HONORABLE VICTOR MARRERO, United States District Judge,

1. The Court is also mindful of the realities of modern arbitration. Even if the NASD rules, as Brownstone asserts, do not specifically provide for depositions, interrogatories, requests for admissions, and other means of obtaining discovery that are available in litigation, there is no indication that the rules necessarily preclude such procedures, or that the restriction could not be waived. In this regard, the Court recognizes that, more and more, arbitration proceedings are being procedurally transformed into mirror images of litigation. *See Odfjell ASA v. Celanese AG,* 328 F.Supp.2d 505, 507 (S.D.N.Y.2004); *see also Fairchild Corp. v. Alcoa, Inc.,* 510 F.Supp.2d at 1295–98, 2007 WL 2775141, at *12–16 (S.D.N.Y.2007) (citing cases and other authorities).

## I. Introduction

Defendant and Counterclaim/Third–Party plaintiff Gordon Levey ("Levey") moves to stay this action and to compel arbitration. For the reasons set forth below, I respectfully recommend that Levey's motion be granted.

## II. Facts

### A. Background

Plaintiff and counterclaim/third party defendant Brownstone Investment Group LLC ("Brownstone") is a financial investment company and a broker-dealer registered with the National Association of Securities Dealers ("NASD") (Complaint ¶¶ 5–6). Brownstone was organized by Lowey Family Investment LLC ("LFI") and by Douglas Lowey, individually and as member-manager of LFI (Complaint ¶ 5). Douglas Lowey is a member-manager of Brownstone (Complaint ¶ 7).

Levey worked at Brownstone from 1997 until 2006 (Answer, Counterclaim, and Third–Party Complaint ("Third–Party Complaint") ¶ 10). The status of Levey's position at Brownstone is at issue in this litigation—Levey claims that he was at all times a member of Brownstone; Brownstone denies that Levey ever had a membership interest in the firm and was only an employee. It is undisputed that Levey developed and maintained a proprietary software system for Brownstone during his tenure at the firm.

On or about January 26, 2006, Levey tendered his resignation to Douglas Lowey and requested (1) payment for his alleged ownership interest in Brownstone, at 10% of the company's value, and (2) the release of certain funds contained in a "capital account" maintained by Brownstone (Complaint ¶ 14, Third–Party Complaint ¶ 32).

## B. Litigation History

Brownstone commenced the present action for a declaratory judgment, injunctive relief, and damages on January 31, 2006, alleging that Levey had breached his fiduciary duty and misappropriated trade secrets by taking a copy of the source code to Brownstone's proprietary financial trading software with the intent to disclose it to competitors.

On February 6, 2006, Brownstone moved for, *inter alia*, a preliminary injunction and expedited discovery. On February 9, 2006, the Honorable Victor Marrero, United States District Judge, ordered that certain discovery be completed by February 16, 2006. Levey conducted depositions of Douglas Lowey's father Stephen Lowey and Brownstone employee Barret Naylor ("Naylor") on February 16, 2006, and Douglas Lowey on February 17, 2006.[1] Brownstone deposed Levey on February 15, 2006. On February 22, 2006, Levey filed a memorandum of law in opposition to Brownstone's motion for injunctive relief.

On February 23, 2007, Levey filed an answer asserting counterclaims and third-party claims against Brownstone, Douglas Lowey, Steven Lowey, and LFI (collectively, the "Brownstone parties"), and Naylor. Levey's answer raised thirteen affirmative defenses; his answer did not assert a right to arbitration. Levey's counterclaim/third party complaint alleged, *inter alia*, (1) breach of contract by Brownstone for failing to pay money allegedly owed to Levey; (2) fraudulent misrepresentation by Douglas Lowey that Levey would have a membership interest in Brownstone, (3) conspiracy among Douglas Lowey, Steven Lowey, Naylor, and LFI to deprive Levey of his ownership interest in Brownstone, (4) breach of fiduciary duty by Douglas

---

1. The record does not disclose why the deposition of Douglas Lowey was conducted after the discovery deadline set by Judge Marrero.

Lowey, and (5) conversion of the funds in Levey's capital account by Brownstone, Douglas Lowey, and LFI.

Brownstone filed a reply memorandum of law in support of its motion for injunctive relief on February 27, 2006. After oral argument before Judge Marrero on March 3, 2006, the parties stipulated that Levey had either returned all programming information pertaining to the software in issue to Brownstone or had delivered the information to his attorneys, and that neither Levey nor his attorneys had provided or would provide any information concerning the software to any third parties. The stipulation was "So Ordered" by Judge Marrero on March 22, 2006, without prejudice to a future application by Levey for relief from the stipulation and Order.

On April 7, 2006, Levey served the Brownstone parties with twenty requests to admit, twenty interrogatories and sixty-five document requests (Affirmation of Harry S. Davis, Esq., dated March 23, 2007 ("Davis Aff.") ¶ 9). The Brownstone parties responded to Levey's interrogatories and requests to admit on May 8, 2006,[2] and produced over 19,000 pages of documents in response to Levey's document requests on August 10, 2006 (Davis Aff. ¶ 10). Brownstone completed a rolling production of approximately 25,000 pages of emails on December 1, 2006 (Davis Aff. ¶ 10).

In the interim, Naylor and Stephen Lowey filed motions to dismiss the third-party complaints, and Brownstone, Douglas Lowey, and LFI filed answers, all on April 14, 2006. Levey filed opposition papers to Barret Naylor's and Stephen Lowey's motions to dismiss on May 12, 2006, along with an amended answer. Like his original answer, Levey's amended answer did not assert arbitration as an affirmative defense. Naylor and Stephen Lowey filed reply memoranda in support of their motions to dismiss on June 2, 2006. I held conferences with the parties to resolve discovery and scheduling issues on June 8, July 25, September 18, and November 14, 2006. In addition, the parties voluntarily engaged, unsuccessfully, in an extra-judicial mediation proceeding in August of 2006 (Declaration of Eric B. Fisher, Esq., dated March 23, 2007 ("Fisher Decl.") ¶ 9).

In addition to the depositions noted on Page 3 above, Levey conducted depositions of Michelle Halla (a Brownstone employee), Joanne Bartmess (Brownstone's financial operations officer), Fred Farkouh (Brownstone's outside accountant), and Thomas Boucher (a principal at a Brownstone competitor), on October 16, November 2, November 3, and November 6, 2006, respectively (Davis Aff. ¶ 11). Bartmess and Farkouh also produced over 1,000 pages of documents to Levey before their depositions (Davis Aff. ¶ 11). Levey also obtained documents from the NASD in December 2006 pursuant to subpoena (Davis Aff. ¶¶ 12, 17).

On December 14, 2006, Levey verbally expressed his intention to seek arbitration of this matter to the Brownstone parties and Naylor. Levey retained and substituted new counsel on December 18, 2006, and, by letter to Judge Marrero of the same date, requested permission to file an application for an order compelling arbitration of this matter before the NASD, explaining that his prior counsel had failed to advise him of his right to arbitration. Judge Marrero granted Levey's request on December 22, 2006, and referred the matter to the undersigned on January 12, 2007, to report and recommend concerning Levey's application to compel arbitration.

---

2. The record does not disclose how many interrogatories were actually answered and how many requests to admit were admitted.

Meanwhile, by Decision and Order dated January 3, 2007, Judge Marrero dismissed both Levey's third-party claims against Stephen Lowey and his fraud claim against Naylor without prejudice, but declined to dismiss Levey's claims against Naylor for a declaratory judgment and rescission. Naylor submitted an answer on the remaining claims against him on January 18, 2007.

On February 28, 2007, Levey filed the present motion to stay this matter pursuant to the Federal Arbitration Act and compel arbitration before the NASD. All remaining parties have submitted briefs concerning the issue.

### C. The Parties' Arguments

In support of this motion, Levey argues that Brownstone, as an NASD member firm, is required to arbitrate this dispute pursuant to the rules of the NASD and that the entire case, including all counterclaims and third-party claims, is subject to mandatory arbitration. In response, the Brownstone parties and Naylor argue that Brownstone is not required to arbitrate any of the claims in this dispute and that Levey has waived any right he may have had to compel arbitration.[3] Levey also argues that his participation in the case is not sufficient to waive his right to compel arbitration.

### III. Analysis

#### A. Motion to Stay Pending Arbitration

"Through the [Federal Arbitration Act], Congress has declared a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.,* 424 F.3d 278, 281 (2d Cir.2005); *e.g. Arci-*

niaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir.2006); *MBNA Am. Bank, N.A. v. Hill,* 436 F.3d 104, 107 (2d Cir.2006); *Denney v. BDO Seidman,* 412 F.3d 58, 68–69 (2d Cir.2005). "Consistent with [this] policy ..., 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd., supra,* 424 F.3d at 281, quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *e.g. Shaw Group Inc. v. Triplefine Int'l Corp.,* 322 F.3d 115, 120 (2d Cir.2003); *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.,* 307 F.3d 24, 29 (2d Cir.2002).

■■■ Four factors are relevant to a motion to stay an action pending arbitration:

A court asked to stay proceedings pending arbitration must resolve four issues: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Oldroyd v. Elmira Sav. Bank,* 134 F.3d 72, 75–76 (2d Cir.1998), citing *Genesco Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987). *See also Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 121 (2d Cir.1991); *Bird v. Shearson Leh-*

---

**3.** Levey also argues that compelling arbitration will avoid a potential defect that could arise in the Court's diversity subject matter jurisdiction if he is found to be a member of

Brownstone. Because there is no motion addressed to the Court's subject matter jurisdiction, I find that this issue is not ripe for adjudication.

man/American Express, Inc., 926 F.2d 116, 118 (2d Cir.1991).

Applying these four factors to this case compels the conclusion that a stay pending arbitration is appropriate.

### 1. Existence of Arbitration Agreement

Levey's motion papers assert that an agreement to arbitrate exists; neither the Brownstone parties nor Naylor contest this assertion. Accordingly, I shall assume the existence of an arbitration agreement in this matter. The Brownstone parties and Naylor argue that Levey has waived any right he may have had to seek arbitration, however, through delay and by engaging in substantial litigation. They also argue that compelling arbitration at this juncture would cause prejudice.

The argument of the Brownstone parties and Naylor is unpersuasive. In view of the strong federal policy in favor of arbitration, waiver of the right to arbitrate "is not to be lightly inferred." Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 (2d Cir. 1968); accord Leadertex v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir.1995). Rather, a waiver will be found only when the party against whom waiver is asserted has engaged in substantial litigation activity resulting in prejudice to the party asserting waiver.

[A] party waives its right to arbitration when it engages in protracted litigation that prejudices the opposing party. See Doctor's Assocs., [Inc. v. Distajo, 107 F.3d 126, 131 (2d Cir.1997) ]; Cotton v. Slone, 4 F.3d 176, 179 (2d Cir.1993); Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir.1991). "[P]rejudice as defined by our cases refers to the inherent un-fairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." Doctor's As-socs., 107 F.3d at 134.... Thus, we have

found that a party waived its right to arbitration when it engaged in extensive pre-trial discovery and forced its adversary to respond to substantive motions, see Com–Tech Assocs. v. Computer Assocs. Int'l, Inc., 938 F.2d 1574, 1576–77 (2d Cir.1991), delayed invoking arbitration rights by filing multiple appeals and substantive motions while an adversary incurred unnecessary delay and expense, see Kramer, 943 F.2d at 179, and engaged in discovery procedures not available in arbitration, see Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkts. Corp., 996 F.2d 1478, 1480 (2d Cir.1993) (per curiam).

Therefore, in determining whether [a party] has waived its right to arbitration, we will consider such factors as (1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice. PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir.1997). I shall address each of these factors in turn.

### a. Time Elapsed from Commencement of Litigation

Plaintiff commenced this action on January 31, 2006. Levey did not assert arbitration as a defense in his answer or amended answer. Levey first expressed his intention to seek arbitration on December 14, 2006—approximately ten and one-half months later. This delay is not, by itself, enough to infer waiver. See Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 122 (2d Cir.1991) (delay of over three years, standing alone, is an insufficient basis on which to find waiver); Sweater Bee by Banff, Ltd. v. Manhattan Indus., 754 F.2d 457, 461 (2d Cir.1985) (right to arbitrate not waived despite two year delay). Delay is not viewed in iso-

lation, however, but rather must be considered in conjunction with the amount of litigation that occurred during the period of delay and any proof of resultant prejudice. *See PPG Indus., Inc. v. Webster Auto Parts, Inc., supra,* 128 F.3d at 108.

### b. *Amount of Litigation*

The parties in this matter engaged in substantial litigation before Levey notified the Brownstone parties and Naylor of his intention to seek arbitration of this dispute. Levey had, among other things, filed counterclaims and third-party claims, conducted seven depositions, served twenty requests to admit, twenty interrogatories and sixty-five document requests, and received over 44,000 pages of documents in discovery. These actions certainly pertained to substantial issues going to the merits of this dispute, and, therefore, weigh in favor of a finding of waiver. *See S & R Co. of Kingston v. Latona Trucking, Inc.,* 159 F.3d 80, 84 (2d Cir.1998) (filing of counterclaims and extensive discovery requests may constitute litigation pertaining to substantial issues going to the merits that supports a finding of waiver); *PPG Indus., Inc. v. Webster Auto Parts, Inc., supra,* 128 F.3d at 107 (engaging in discovery and filing substantive motions may evidence a preference for litigation that supports a finding of waiver).

### c. *Prejudice*

Although Levey's earlier conduct in the litigation is inconsistent with his motion to compel arbitration, "there can be no waiver unless that conduct has resulted in prejudice to the other part[ies]." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d at 26; *see Cotton v. Slone,* 4 F.3d 176, 180 (2d Cir.1993) (requiring prejudice); *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985) (same). The Brownstone parties and Naylor have not demonstrated the prejudice that is required for a finding of waiver.

The Browstone parties and Naylor first argue that they will be prejudiced if this dispute proceeds to arbitration because Levey has utilized discovery procedures that are not available in arbitration. Prejudice may result when a party seeking to compel arbitration engages in, and secures the benefits of, discovery procedures not available in arbitration. *See Cotton v. Slone, supra,* 4 F.3d at 180 (finding prejudice where party "secured for himself the benefits of pretrial discovery that is often unavailable in an arbitral forum"); *Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkts. Corp.,* 996 F.2d 1478, 1480 (2d Cir. 1993) (per curiam) (finding prejudice where party obtained "benefits of discovery that it most likely would not otherwise have been entitled to in arbitration"). Prejudice does not occur, however, where the party seeking to compel arbitration "obtain[s] no facts in discovery that would have been unavailable in arbitration." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., supra,* 67 F.3d at 26.

Here, Levey received thousands of pages of document discovery, conducted depositions of seven individuals, and obtained sworn responses to interrogatories and requests to admit. With respect to the documentary evidence obtained by Levey, the Brownstone parties and Naylor concede that document discovery is available in NASD arbitration, but assert that the scope of such discovery is narrower than that available under the Federal Rules of Civil Procedure. The Brownstone parties and Naylor fail to identify, however, any documents obtained by Levey that would have been unavailable under the NASD discovery rules. Similarly, the Brownstone parties and Naylor assert that depositions are not available in NASD arbitration, but fail to identify any information obtained by Levey through the depositions that would have been unavailable in NASD arbitration. The Brownstone

parties and Naylor make no claim that interrogatories and requests to admit, or the information that Levey received in response thereto, would be unavailable in NASD arbitration. Because the Brownstone parties and Naylor have not identified any benefits or information produced in discovery that would have been unavailable to Levey in an arbitral forum, they have not demonstrated any prejudice. *See Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., supra,* 67 F.3d at 26.[4]

The Brownstone parties and Naylor next argue that they have incurred unnecessary expense in connection with responding to discovery requests and litigating this case because of Levey's delay in seeking arbitration. While prejudice may result "when a party ... delays invoking arbitration rights while the adversary incurs unnecessary delay or expense," *Cotton v. Slone, supra,* 4 F.3d at 179, "pretrial expense and delay[,] without more, do not constitute prejudice sufficient to support a finding of waiver." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., supra,* 67 F.3d at 26; *see Crysen/Montenay Energy Co. v. Shell Oil Co.,* 226 F.3d 160, 163 (2d Cir.2000) ("Incurring legal expenses inherent in the litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver."); *Rush v.*

*Oppenheimer & Co., supra,* 779 F.2d at 887–88 (pre-trial expense and delay insufficient to support waiver). The Brownstone parties and Naylor have not shown that they incurred any extraordinary expenses in responding to Levey's discovery requests or otherwise conducting this litigation. Accordingly, they are unable to demonstrate prejudice on this ground either.

■ Last, the Brownstone parties and Naylor argue that their legal positions would be substantially prejudiced if this case is allowed to proceed to arbitration because Levey would be able to relitigate claims against Stephen Lowey and Naylor which Judge Marrero recently dismissed.[5] Prejudice may be found where "damage to a party's legal position ... occurs [because] the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue," *Doctor's Assocs., Inc. v. Distajo,* 107 F.3d 126, 134 (2d Cir. 1997), or where "a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration." *Kramer v. Hammond,* 943 F.2d 176, 179 (2d Cir.1991). Here, however, it is difficult to understand how either Stephen Lowey or Naylor would be prejudiced by the arbitration of this dispute, since Judge Marrero dismissed Levey's claims against them *without* prejudice.[6]

---

4. The Brownstone parties and Naylor attempt to distinguish the facts in this case from those in *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., supra,* 67 F.3d at 20, on the ground that the party seeking to compel arbitration in *Leadertex* obtained virtually no significant information at all through discovery, whereas Levey has obtained voluminous information. This distinction is not compelling, however, in light of *PPG Indus., Inc. v. Webster Auto Parts, Inc., supra,* 128 F.3d at 109–10, where the Second Circuit expressly declined to decide whether the volume of discovery, by itself, is a sufficient basis for establishing prejudice. The Brownstone parties and Naylor have not cited, nor has my research revealed, any authority to suggest that the amount of information obtained by Levey

is, in itself, sufficient to demonstrate prejudice, without a showing that at least some of this information would have been unavailable in arbitration.

5. The Brownstone parties also argue that Levey's claims against Stephen Lowey were not, and are not, eligible for NASD arbitration. This argument is puzzling, however, because, if the claims against Stephen Lowey are not eligible for arbitration, it is difficult to see how granting the present motion would cause any substantive prejudice to his legal position.

6. The Brownstone parties also argue that compelling this dispute to arbitration would enable Levey to evade the requirement of Fed.R.Civ.P. 15(a) that he obtain leave of

Accordingly, the Brownstone parties and Naylor are unable to demonstrate such substantive prejudice to their legal positions as to justify a finding of waiver.[7]

### d. *Summary*

Although the relevant factors not line up with absolute uniformity, I find that the Brownstone parties and Naylor have not demonstrated the existence of facts sufficiently weighty to overcome the strong federal policy in favor of arbitration. Accordingly, I conclude that Levey has not waived his right to compel arbitration of this matter.

### 2. *Scope of the Arbitration Agreement*

The parties disagree as to the scope of the NASD Code of Arbitration. Levey asserts that all claims and parties in this litigation are subject to mandatory NASD arbitration. The Brownstone parties argue that the claims and counterclaims between Brownstone and Levey, though eligible for NASD arbitration, are not subject to mandatory arbitration, that Levey's claims against LFI are not eligible for NASD arbitration at all, and that Brownstone's application for preliminary injunction was not "susceptible" to NASD arbitration.

The NASD Code of Arbitration provides in pertinent part:

10101. Matters Eligible for Submission

This Code of Arbitration Procedure is prescribed and adopted ... for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association, or arising out of the employment or termination of employment of associated person(s) with any member ...:

(a) between or among members;

(b) between or among members and associated persons ....

....

10201. Required Submission

·(a) [A] dispute, claim, or controversy eligible for submission under [Rule 10101] between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of:

(1) a member against another member;

(2) a member against a person associated with a member or a person associated with a member against a member; and

(3) a person associated with a member against a person associated with a member.

---

court in order to replead his claims against Stephen Lowey. This argument is unavailing, however, given that Fed.R.Civ.P. 15(a) does not impede Levey's ability to commence a new action against Stephen Lowey. Accordingly, since Levey can avoid the minimal requirements of Fed.R.Civ.P. 15(a) by simply commencing a new action against Stephen Lowey, there is no substantive difference in Stephen Lowey's legal position whether the dispute proceeds here or in arbitration.

7. The Brownstone parties and Naylor further assert that compelling this matter to arbitra-

tion would enable Levey to evade an obligation to reimburse the Brownstone parties and Naylor for costs in the event that Levey obtains a judgment less favorable than the Fed.R.Civ.P. 68 Offer of Judgment served on Levey on September 19, 2006 by the Brownstone parties and Naylor. The Brownstone parties and Naylor cite no authority, and my own research reveals no authority, to support the proposition that the existence of an offer of judgment is sufficient to result in a waiver of the right to arbitration. Accordingly, I find this argument to be without merit.

NASD Code of Arbitration, Rules 10101, 10201.

Levey asserts, and the Brownstone parties do not contest, that Levey is an "associated person" within the meaning of Section 10101, and that the instant dispute arises out of his employment or termination of employment with Brownstone. Thus, Brownstone's claims against Levey, and Levey's counterclaims against Brownstone, are eligible for NASD arbitration.

Similarly, neither the Brownstone parties nor Naylor dispute that Levey's third-party claims against Douglas Lowey and Naylor are arbitrable as disputes between or among members and associated persons. *See McMahan Sec. Co. v. Forum Capital Mkts.*, 35 F.3d 82, 87 (2d Cir.1994) (defining associated person as "every ... partner, officer, director, ... or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member"), *quoting NASD Manual* ¶ 1101(m).

The Brownstone parties challenge only whether the claims, counterclaims, and third-party claims among the parties are subject to mandatory arbitration under NASD Code of Arbitration Rule 10201. The Brownstone parties argue that, under NASD Code of Arbitration Rule 10201, arbitration is only mandatory "at the instance" of either a member or a person associated with a member, against a member or a person associated with a member, and that, because none of the parties here have submitted any of the claims to NASD arbitration, arbitration is not mandatory. This reasoning is unpersuasive. Given

that Levey has not waived his right to arbitration, his present motion to compel arbitration would appear to be precisely the type of "instance" which would trigger the application of Rule 10201 and render arbitration mandatory. Accordingly, I conclude that the claims and counterclaims between Brownstone and Levey, as well as the third-party claims against Douglas Lowey and Naylor, are subject to mandatory arbitration under the NASD Code of Arbitration.

Levey also argues that his third-party claims against LFI are arbitrable because LFI is a "certain other" subject to mandatory arbitration under NASD Code Rule 10201. This argument lacks merit. The Second Circuit has defined the term "certain other" as an individual who "plays an active role in the securities industry, is a signatory to a securities-industry arbitration agreement (or is an instrument of another party to the arbitration), and has voluntarily participated in the particular events giving rise to the controversy underlying the arbitration." *McMahan Sec. Co. v. Forum Capital Mkts., supra*, 35 F.3d at 88. Here, the Brownstone parties assert that LFI does not play an active role in the securities industry, and Levey neither argues, nor offers evidence, to the contrary. Accordingly, I conclude that LFI is not a "certain other" under NASD Code Rule 10201, and, therefore, Levey's third-party claims against LFI are non-arbitrable.[8]

Brownstone's argument that its initial application for a preliminary injunction was not susceptible to arbitration is unavailing. Since Brownstone's claim for pre-

---

**8.** The parties also briefly address the issue of whether Levey's claims against Stephen Lowey are arbitrable. However, because all of Levey's claims against Stephen Lowey have been dismissed and there are no claims currently pending against Stephen Lowey in this dispute, there is no need to address this argument.

liminary injunctive relief was resolved by stipulation between the parties, this issue is moot at this time and not germane to the present motion.

### 3. *Number of Claims Subject to Arbitration*[9]

Because LFI is joined in this matter only by virtue of its ownership interest in Brownstone rather than any active participation in the conduct underlying the dispute, LFI's liability will likely be derivative of Levey's claims against Brownstone. Accordingly, the stay of this proceeding should extend to Levey's third-party claim against LFI for reasons of judicial economy and to avoid inconsistent results.

### 4. *Summary*

Since all relevant factors weigh in favor of arbitration, I recommend that Levey's motion to stay this matter and to compel arbitration be granted.

### IV. *Conclusion*

For all the foregoing reasons, it is respectfully recommended that Levey's motion to stay this action and to compel arbitration be granted.

### V. *Objections*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections. *See also* Fed.R.Civ.P. 6(a) and 6(e). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Victor Marrero, United States District Judge, 500 Pearl Street, Room 660, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Marrero. FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

---

**9.** Because there are no claims for federal statutory relief in this action, it is not necessary to address the third prong of *Oldroyd v. Elmira Sav. Bank, supra,* 134 F.3d 72, 75–76 (2d Cir.1998).