**BIMOTA SPA, Plaintiff,**

v.

**Jean Marc ROUSSEAU et al., Defendants.**

**No. 08 Cv. 10274 (VM).**

United States District Court, S.D. New York.

June 16, 2009.

Norman B. Arnoff, Burkhart Wexler & Hirschberg, LLP, Garden City, NY, for Plaintiff.

Jennifer Lynn Bougher, Paul Michael Kaplan, Arent Fox LLP, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Bimota SPA ("Bimota SPA") filed the complaint in this action on November 25, 2008. The following day, the Court issued an Order directing defendants Jean Marc Rousseau ("Rousseau") and Roberta Rousseau (collectively "Defendants") to show cause why a preliminary injunction preventing them from selling any Bimota SPA motorbikes during the pendency of the action should not issue. Following briefing and oral argument, the Court denied Bimota SPA's request for a preliminary injunction against Defendants on January 12, 2009. Bimota SPA then filed an amended complaint dated January 20, 2009 (the "Amended Complaint"). Defendants now move to dismiss some of the claims asserted in the Amended Complaint and to compel arbitration of the remaining claims.

For the reasons discussed below, Defendants' motion to compel arbitration is GRANTED with respect to all claims; the Court therefore does not consider Defendants' partial motion to dismiss.

### I. BACKGROUND [1]

Bimota SPA is an Italian manufacturer of motorbikes. Rousseau is the President and Chief Executive Officer of Bimota North America, Inc. ("Bimota NA"), the former exclusive distributor of Bimota SPA's products in North America. Roberta Rousseau is the controlling shareholder of Bimota NA. Bimota NA has been distributing Bimota SPA's products in North America since 2005. Most recently, Bimota NA sold Bimota SPA's products pursu-

---

[1]. The facts below are taken from the Amended Complaint and the Affidavit of Jean Marc Rousseau in Support of Defendants' Motion to Dismiss the First Amended Complaint, dated February 17, 2009 ("Rousseau Aff."), and the documents attached thereto or incorporated by reference. *See Global Network Commc'ns, Inc. v. City of N.Y.,* 458 F.3d 150, 156–57 (2d Cir.2006). Except where specifically referenced, no further citation to these sources will be made.

ant to the Sale and Licence Agreement dated May 6, 2007 (the "Agreement"). The Agreement contains a paragraph entitled "Governing Law: Arbitration" that provides, in part:

> The law of the state of New York shall govern this Agreement and any claims between the parties to this Agreement that cannot be resolved by negotiation between the parties shall be submitted to arbitration in New York City pursuant to the rules of the International Chamber of Commerce.

(Agreement ¶ 21.) Rousseau signed an amendment to the Agreement in April 2008, entitled Inventory Management Procedure and Certification (the "IMPC"). The IMPC made clear that the motorbikes being held by Bimota NA were the property of Bimota SPA and included provisions governing the sale of the bikes and a provision requiring Bimota NA to return the motorbikes to Bimota SPA upon their request. Pursuant to the IMPC, Bimota NA provided Bimota SPA a list of the motorbikes it had in its possession at the time the IMPC was signed.

Bimota SPA alleges that Bimota NA and its authorized representatives informed it that Bimota NA was insolvent in June 2008. By letter dated June 30, 2008, Bimota SPA demanded the return of the Bimota SPA motorbikes in Bimota NA's possession. Bimota SPA alleges that Defendants have refused to return the motorbikes, sold some of the motorbikes without Bimota SPA's authorization and converted the profits from those sales into personal property.

Bimota SPA served Defendants with a Demand for Arbitration and Statement of Claim in an action pending before the American Arbitration Association dated November 11, 2008, captioned *Bimota SPA v. Bimota North America, Inc.* Bimota SPA then instituted this action, original-

ly filed on November 25, 2008. In its Amended Complaint, Bimota SPA asserts claims against the Defendants for conversion, fraud, tortious interference with contract, breach of personal guaranty, and breach of fiduciary duty. Defendants seek to dismiss the fraud, tortious interference and breach of fiduciary duty claims and ask the Court to compel arbitration as to the remaining claims.

## II. DISCUSSION

### A. LEGAL STANDARD

"The FAA creates a 'body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA].'" *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 47 (2d Cir.2000) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). "The FAA is an expression of 'a strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Ross v. American Exp. Co.*, 547 F.3d 137, 142 (2d Cir.2008) (quoting *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir.2001)). Indeed, "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit has] often and emphatically applied." *Arciniaga v. General Motors Corp.*, 460 F.3d 231, 234 (2d Cir.2006) (internal quotation marks omitted). That said, a party may be compelled to arbitrate a dispute only to the extent he or she has agreed to do so. *See Bell v. Cendant Corp.*, 293 F.3d 563, 566–67 (2d Cir.2002).

Under the FAA, "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save

504

upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA authorizes the Court to compel arbitration if the parties have entered into an agreement to arbitrate and one party refuses to honor that agreement. *See id.* § 4.

■ In deciding whether an action should be sent to arbitration, the Court must conduct the following inquiry:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus. v. Stolt–Nielsen SA*, 387 F.3d 163, 169 (2d Cir.2004) (*quoting Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75–76 (2d Cir.1998)). The Court refers to these factors as the "Oldroyd Factors."

B. *APPLICATION*

■ Bimota SPA argues that Defendants cannot compel arbitration under the Agreement because Defendants were not signatories to the Agreement. It further asserts that even if Defendants had, at some point, possessed a right to compel the arbitration of the claims, they waived that right by seeking to litigate some of the claims in this Court through their motion to dismiss. Defendants assert that they have a right to compel arbitration under an estoppel theory because Bimota SPA's claims are essentially claims against Bimota NA for breaches of the Agreement. They assert that Bimota SPA should be estopped from asserting claims that arise under the Agreement, while de-

nying the applicability of the Agreement's terms at the same time.

The only dispute between the parties as to the Oldroyd Factors arises over the first—that the parties agreed to arbitrate. Bimota SPA argues that it agreed to arbitrate its disputes with Bimota NA and did not agree to arbitrate with Defendants.

[4] "A non-signatory may compel arbitration on an estoppel theory, where (i) there is a close relationship between the parties and controversies involved and (ii) the signatory's claims against the non-signatory are 'intimately founded in and intertwined with the underlying' agreement containing the arbitration clause." *Birmingham Assocs., Ltd. v. Abbott Labs.*, 547 F.Supp.2d 295, 301 (S.D.N.Y.2008) (*quoting JLM Indus.*, 387 F.3d at 177) (internal citations and quotations omitted). "Claims are intertwined 'where the merits of an issue between the parties [i]s bound up with a contract binding one party and containing an arbitration clause.'" *Id.* (*citing JLM Indus.*, 387 F.3d at 178 n. 7) (*citing Choctaw Generation, Ltd. Part. v. American Home Assur. Co.*, 271 F.3d 403, 406 (2d Cir.2001)) (alteration in original).

■ Determination of the ability of a non-signatory to compel arbitration requires a "fact-specific" inquiry. *JLM Indus.*, 387 F.3d at 178 n. 7. The Court must undertake a "careful review of 'the relationship among the parties, the contracts they signed ..., and the issues that had arisen' among them" in order to decide whether "'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with that agreement that the estopped party has signed.'" *Id.* at 177 (*quoting Choctaw*, 271 F.3d at 406).

Bimota NA, signatory to the Agreement, and Defendants have the kind of "close relationship" that is required by the first prong of the estoppel test. *Chase Mort-*

*gage Co. West v. Bankers Trust Co.*, 00 Civ. 8150, 2001 WL 547224, at *2 (S.D.N.Y. May 23, 2001). Defendants are the President and CEO and the controlling shareholder of Bimota NA. Bimota SPA acknowledges this close relationship in the Amended Complaint by asserting that Bimota NA is the alter ego of, or corporate shell for the Defendants. It asserts that Bimota NA is so controlled by Defendants, that piercing the corporate veil is appropriate. Therefore, Bimota SPA has not only conceded but, in fact, affirmatively alleges that Bimota NA and Defendants are closely related.

■ In addition, the claims Bimota SPA asserts in this action are tightly intertwined with the terms of the Agreement, satisfying the second prong of the estoppel test. Bimota SPA is estopped from avoiding arbitration as required under the Agreement while asserting claims that are linked with the provisions of that same Agreement. Although Bimota SPA brought this action against Defendants, as individuals, the relationship between Bimota SPA and Defendants is founded in the terms of the Agreement. "The purpose of the doctrine of equitable estoppel is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is from 'rely[ing] on the contract when it works to its advantage [by establishing the claim], and repudiat[ing] it when it works to his disadvantage [by requiring arbitration].'" *Denney v. Jenkens & Gilchrist*, 412 F.Supp.2d 293, 298 (S.D.N.Y.2005) (*quoting In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir.2002)) (alterations in original).

Specifically, Bimota SPA's claim for conversion alleges that neither Bimota NA nor the Defendants have paid Bimota SPA for the motorbikes belonging to Bimota SPA, that Defendants have refused to return the motorbikes to Bimota SPA and have, in fact, sold those motorbikes and kept the proceeds. Bimota SPA presumably shipped those motorbikes to Bimota NA pursuant to the terms of the Agreement. Under the Agreement, Bimota SPA retained ownership of the motorbikes it sent Bimota NA, and Bimota NA was required to return them upon Bimota SPA's request. The Agreement imposed conditions on Bimota NA's possession of the motorbikes. The claim for conversion essentially alleges violations of these conditions.

The second cause of action, fraud, is based on the Defendants' purported misrepresentations regarding the insolvency of Bimota NA. Bimota SPA alleges that, had it been told the truth regarding Bimota NA's financial health, it "would not have entered into further contracts, terminated operative contracts and taken more immediate remedial action to prevent and limit damage." (Amended Complaint ¶ 57.) Specifically, Bimota SPA claims that if Defendants had been truthful with it, Bimota SPA would have stopped sending motorbikes to Bimota NA. Although these allegations are couched in terms of specific representations Defendants made to Bimota SPA, they relate to Bimota SPA's contractual relationship with Bimota NA, and these representations would have been made by Defendants as agents and on behalf of Bimota NA.

Bimota SPA's claim for tortious interference with contract clearly relates to the Agreement, as it alleges that Defendants interfered with the contract between Bimota SPA and Bimota NA.

Bimota SPA's fourth cause of action asserts breach of a personal guaranty issued by Rousseau to Bimota SPA in support of a temporary agreement which controlled the dealings between Bimota SPA and Bimota NA from November 2006 until the execution of the Agreement in May 2007.

This claim asserts a cause of action under a guaranty that is outside of the Agreement, but it relates to the same "subject matter of the underlying agreement" and is another indication of the close relationship between Bimota NA and one of the Defendants, Rousseau. *Chase Mortgage Co.*, 2001 WL 547224 *2.

Bimota SPA's final claim against Defendants is that they breached the fiduciary duty they owed Bimota SPA, which had "entrusted its products and the proceeds of its product to the Rousseau Defendants and the entity they owned and exclusively controlled." (Amended Complaint ¶ 74.) This claim clearly arises under the Agreement that governed the entrusting of Bimota SPA's product to Defendants and Bimota NA.

In addition, the claims Bimota SPA asserts in the pending arbitration are akin to the claims Bimota SPA asserts in this action. The Court finds that the arbitration proceeding is the appropriate forum for resolving this dispute. Further, by having initiated an arbitration proceeding against Bimota NA, Bimota SPA has implicitly acknowledged the validity of the Agreement's arbitration clause.

 Finally, the Court finds that Defendants have not waived their right to compel arbitration under the Agreement by seeking dismissal of some of the claims in the Amended Complaint. Waiver of the right to arbitrate can be found only where the opposing party demonstrates that it has suffered some prejudice, which is more likely to be found after extensive litigation has taken place. *Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102, 105 (2d Cir. 2002). In this case, Defendants simultaneously sought dismissal of certain claims and sought to compel arbitration of the remaining claims. Defendants raised the arbitration issue at the earliest possible

moment, and Bimota SPA has not shown that it suffered any prejudice.

## C. DISMISSAL OF THE ACTION

 The FAA directs the district court, "on application of one of the parties," to enter a stay in a case where the asserted claims are "referable to arbitration." 9 U.S.C. § 3. However, "[a]ll courts of which we are aware have followed the rule that, '[w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings.'" *Spencer–Franklin v. Citigroup/Citibank N.A.*, No. 06 Civ. 3475, 2007 WL 521295, at *4 (S.D.N.Y. Feb. 21, 2007) (*quoting Rubin v. Sona Int'l Corp.*, 457 F.Supp.2d 191, 198 (S.D.N.Y.2006)) (collecting cases); *see also Kowalewski v. Samandarov*, 590 F.Supp.2d 477, 491 (S.D.N.Y.2008); *Drakeford v. Washington Mut.*, No. 07 Civ. 3489, 2008 WL 2755838, at *4 (S.D.N.Y. July 11, 2008).

Because the Court has determined that all of Bimota SPA's claims must be submitted to arbitration, the Court dismisses this action without prejudice.

## III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 22) of defendants Jean Marc Rousseau and Roberta Rousseau to compel arbitration is GRANTED.

The Clerk of the Court is directed to withdraw any pending motions and to close this case without prejudice.

**SO ORDERED.**